## SAN JUANA PEREZ v. SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY.

### Decided February 19, 1902.

**1.—Fellow-Servants—Negligence—Railroad Handcar—Statute Construed.**

The Act of June 18, 1897 (Revised Statutes, article 4560f), providing, in effect, that where employes of a railway or street railway company are injured while "engaged in the work of operating its cars, locomotives, or trains," the company will be liable therefor although the injury may have resulted from the negligence of a fellow-servant, applies to employes of a railway company while engaged in operating a handcar on the railroad track in the course of their work, and renders the company liable for the death of an employe caused by the negligent act of a fellow-servant in stopping the car so suddenly as to throw the deceased therefrom.

**2.—Contributory Negligence—Pleading and Charge.**

Where contributory negligence is not pleaded the charge should not submit that issue to the jury.

**3.—Same—Charge on Weight of Evidence.**

A charge that if the deceased "did not fall off the handcar, but voluntarily jumped off, then his act constitutes in law either contributory negligence or suicide, and plaintiff can not recover," was on the weight of evidence as invading the right of the jury to pass on the question of whether the facts established contributory negligence.

Appeal from Bee. Tried below before Hon. Jas. C. Wilson.

*Dougherty & Dougherty,* for appellant.

*Proctors,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellant to recover damages in the sum of $10,000 alleged to have accrued through the negligent killing of Esteven Perez, her son. A trial by jury resulted in a verdict and judgment for appellee.

The allegations as to negligence were as follows: "Plaintiff alleges that heretofore, to wit, on or about the 3d day of November, 1900, deceased Esteven Perez was in the employ of defendant company as a section hand on defendant's line of railway in Bee County, Texas, on section known as section No. 70, under the direction and supervision of one August Kessler, an employe of defendant company as a section foreman, and in charge of the section gang in which Esteven Perez was employed, and that said Kessler had the control, management, and direction of said section gang.

"That on said date of November 3, 1900, said Esteven Perez, together with three other section hands, under the direction of said Kessler, were propelling a handcar along the defendant's line of railway at a rapid rate in the due performance of the duties of their employment, when suddenly said Kessler negligently, and without exercising any care and without warning the deceased, applied the brake so suddenly and violently as to cause said car to check its speed and stop it almost

immediately, thereby causing the said Esteven Perez, who was exercising ordinary care, to be thrown off said car. That the said Esteven Perez was thrown ahead of said car and said car ran over and across his body, inflicting upon him such injuries that as the result of the same Esteven Perez died on said November 3, 1900. That said negligence of defendant, its agents and employes as aforesaid, was the proximate cause of deceased's injuries and death. That had defendant, its agents and employes, exercised ordinary care in checking the speed or stopping the said car, said injuries would not have occurred."

The evidence established that deceased in company with his fellow section men and a foreman were on a handcar going to a place on the railroad to perform certain labor; that while en route, while descending a hill at a rapid rate, a signal was given the man who handled the brake to stop the car. This he did with such suddenness that deceased, who was at the handles assisting in propelling the car, either fell or was thrown off and injured so badly that death resulted. The evidence established that the foreman gave the signal in the ordinary way for the car to stop immediately, and the only premise upon which to base negligence upon his part would be that he should not have given a signal to stop immediately when the car was moving at the rapid rate it was on a down grade. If the fall of deceased was the result of the negligence of the foreman, it was the negligence of appellee, but if it was the result of the negligence of Frank Trebble, who was the fellow-servant of deceased, the railway company would not be liable, unless it is rendered liable by the Act of June 18, 1897, being now article 4560f of the Revised Statutes. In that article it is provided: "Every person, receiver, or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained by any servant or employe thereof while engaged in the work of operating the cars, locomotives, or trains of such person, receiver, or corporation, and the fact that such servants or employes were fellow-servants with each other shall not impair or destroy such liability." The law quoted has not been judicially construed in Texas, and the questions involved are of first impression in the courts of the State.

Prior to the enactment of the law in question the common law rule prevailed that the master was not liable for the negligence of the fellow-servant, and to destroy this rule and to afford protection to railroad employes operating trains, locomotives, and cars was the intent and purpose of the lawmakers. Similar laws had been enacted in various States of the American Union, and they are usually justified and defended on the ground that peculiar perils surround the employes of railroad companies while engaged in the dangerous work of operating trains, cars, and locomotives, and that they are totally unable to protect themselves against the negligence of their coemployes. Speaking of the reasons for enacting such laws, it was said by the Supreme Court of Minnesota in the case of Benson v. Railway, 77 Northwestern Re-

porter, 798: "These considerations apply to those operating or riding upon handcars as well as to those operating or riding. upon any other railroad cars,—not to the same degree, perhaps, as to dangers connected with the motive power of the car operated or ridden upon, but to an even greater extent as to dangers resulting from the negligence of those operating or running other cars, trains, or engines. In short, operating, running, or riding upon handcars is "within the mischief of the statute, and there is apparently no good reason why the Legislature should have excluded it."

Discussing the same question the Supreme Court of Alabama, in the case of Railway v. Crocker, 11 Southern Reporter, 262, said: "Such cars are used in the ordinary business of railroads. Employes who ride upon them, or who in the discharge of duties on or near to tracks over which they are propelled, are liable to be injured in consequence of the negligent handling of them. * * * It is not necessary that the car be connected in any way with a locomotive, or with other cars forming a train; and we find nothing in the statute to indicate that such a car must be made to be drawn by a locomotive, or to form a part of a train. If the car is adapted to the rails of a railroad, and is used in the business of railroads, we think it none the less within the meaning of the word as used in the statute because it is made to be propelled by hand."

There are decisions of other States in perfect consonance with the foregoing rulings, and we have not been cited to nor have we found any opinion in opposition to them. In common acceptation and under the definitions in the standard lexicon of the country the word "car" signifies any vehicle adapted to the rails of a railroad, and would embrace in its meaning a handcar as well as a freight or passenger car.

It follows that if deceased and his fellow-servants, at the time of his death, were engaged "in the work of operating" the handcar of the railway company, the latter would, under the statute, be liable in damages if the death of deceased resulted from the negligence of his fellow-servants, or either of them. The word "operate" as used in the statute signifies "to perform a work or labor; to put into, or continue in, operation. or activity; to work; as to operate a machine." If the section men were working the handles of the handcar in such manner as to apply the power to the handcar for the purpose of moving it, they were "engaged in the work of operating" it. The operation of the handcar was not the chief labor for which they were employed, but it was connected with their work, and in performing their work of repairing the track, handcars were used, and were very necessary, to enable them to reach the field of their work. In using the handcar the labor of the section men was utilized, and it became a part of the labor for which they were employed to propel the handcar to and from the place of their labors. The statute does not provide that its provisions shall apply to those only whose chief business it is to operate cars, nor that they shall

Vol. 28 Civil—17.

apply to those employes only who operate cars for the carriage of freight or passengers, but it applies to all who may be engaged in the work of operating cars. This construction of the statute is sustained by the decisions of other States.

In the case of Larson v. Railway, 58 Northwestern Reporter, 1076, it was held by the Supreme Court of Iowa that a section hand injured while on a handcar was employed in the operation of cars within the terms of a statute similar in some respects to the Texas law. The same ruling was made in the case of Haden v. Railway (Iowa), 60 Northwestern Reporter, 537.

In the case of Railway v. Artery, 137 United States, 507, the Iowa cases are reviewed, and it was said: "The plaintiff was upon a moving car propelled by hand power. * * * The railway was being used and operated in the movement of the handcar, quite as much as if the latter had been a train of cars drawn by a locomotive. If a single locomotive be on its way to its engine house, after leaving the train which it has drawn, or if it be summoned to go alone for service to a point more or less distant, and in either case, by the negligence of one employe upon it, another employe is injured, the injury takes place in the use and operation of the railway, under section 1307, quite as much as if it takes place while the locomotive is drawing a train of cars."

In the case of Steffenson v. Railway, 11 Lawyers' Reports Annotated, 271, the plaintiff in the usual course of his employment was, with other section men, passing over defendant's track on a handcar running at the rate of about six miles an hour, when it became necessary to stop the car suddenly, and in endeavoring to stop it one of the coemployes on the handcar negligently rushed or pushed against the plaintiff, throwing him from the car, and he was run over and injured. The Supreme Court of Minnesota said: "The men whose business it is to keep the track in repair for the trains to run over,—switchmen, men engaged in making up trains, and moving the cars back and forth in the yards and on side tracks,—are all engaged in operating the railroad; and they are exposed to dangers peculiar to that business. Section men, as well as engineers, conductors, firemen, and brakemen, are operating the railroad. They employ modes and instrumentalities in performing their duties that are not employed in any other business; and whatever dangers are incident to the employment of such modes and instrumentalities are to be regarded as peculiar to their business. The employment of handcars capable of a high rate of speed, run upon railroad tracks, is peculiar to the business of operating railroads."

In the main charge the court proceeded on the theory that appellant was liable if deceased came to his death through the negligence of the servants or employes of appellant, but in a special charge requested by appellee and given by the court the jury was instructed as follows: "Even if you believe from the evidence that the said Esteven Perez was thrown from the handcar by the negligent application of the brake, yet if you further believe from the evidence that the brake was not applied

under the order, direction, or signal of the foreman, Kessler, then plaintiff can not recover in this case." This charge was not only in conflict with the charge of the court, but it made the recovery of appellant depend upon a signal given by the foreman, which is in conflict with the law as to the appellee being liable under the circumstances for the acts of a fellow-servant.

The scope of the opinion of this court as applied to section men extends no farther than while they are actually engaged in operating handcars, and is not intended to reach any acts of theirs while engaged in other work. The decision deals with the facts in this case and no others. In this connection it may be said that we do not think this opinion in conflict with the case of Long v. Railway, 57 Southwestern Reporter, 802, decided by the Supreme Court of Texas. In that case a portion of a section gang on a handcar ran over a member of the same gang who was walking on the track, and it was held that the latter was not a fellow-servant with those on the car. This was all that was demanded by the facts of the case, and in fact all that the opinion can be held to have decided, although it is said in the opinion that if the injury had been inflicted by one of the employes working the handcar upon another engaged in the same work, it would be held that they were engaged upon the same work. That is undoubtedly true, but it does not follow that because they were so engaged and were fellow-servants that the railway company would not have been liable for an injury negligently inflicted by one upon the other, and neither is it so decided in that opinion. The question as to railways being liable for the negligence of fellow-servants on handcars was not raised or discussed in the case of Railway v. Maupin, 63 Southwestern Reporter, 346, decided by the Court of Civil Appeals of the Fifth District.

In a requested charge given by the court the jury was informed that if deceased "did not fall off the handcar, but voluntarily jumped off the handcar, then his act constitutes in law either contributory negligence or suicide, and plaintiff can not recover in this case." The charge was an invasion of the right of the jury to pass upon the question of whether the facts established contributory negligence. Contributory negligence was not pleaded, and it is the rule in Texas that contributory negligence should not be submitted unless presented by plea and supported by evidence. Railway v. Johnson, 90 Texas, 304; Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 289.

We conclude that our former opinion should be withdrawn, a rehearing granted, and the judgment of the District Court reversed and the cause remanded.

*Reversed and remanded.*