## WILLIS GIVENS v. SOUTHERN RAILWAY COMPANY.

## [49 South. 180.]

CONSTITUTIONAL LAW. *Constitution* 1890, *sec.* 193. *Railroads. Master and servant. Fellow-servants. Negligence. Constitution of United States. Am.* XIV. *Laws* 1908, *ch.* 194, *p.* 204.

Constitution 1890, sec. 193, providing that every employee of any railroad corporation shall have the same rights and remedies for injury from the act or omission of the corporation or its employees allowed by law to persons not employees where it results from the negligence of a superior agent or officer, or a person having the right to control or direct the services of the party injured, and when the injury results from the negligence of a fellow servant in another department of labor from that of the party injured or of a fellow servant on another train of cars, or one engaged about a different piece of work:—

(*a*) Only applies to commercial railroads, railroads proper, carrying freight and passengers; since

(*b*) The classification of such railroads is predicated of the inherent danger attending their operation, and if construed to embrace others the section would violate the fourteenth amendment to the constitution of the United States, securing an equal protection of the laws to all litigants; and

(*c*) The employees of such railroad corporations proper can only recover of them when injured by reason of the perils attending their operation; and

(*d*) Hand cars are not more inherently dangerous than other modes of transportation not in any way connected with railroads proper and not used on the tracks of such railroads, and are not within the section; and

(*e*) The statute, Laws 1908, ch. 194, p. 204, purporting to extend the protection of the section to a new class of employees, is prospective and furnishes no relief to an employee injured before its adoption.

2. SAME. *Case.*

Where plaintiff, a laborer belonging to a railroad bridge crew, and his foreman were returning from work on a push car propelled by a lever car under the control of the track section foreman,

and, when nearing the point to which they were destined, the
section foreman ordered the speed of the push car to be dimin-
ished, whereby the cars were separated, and thereupon the sec-
tion foreman directed plaintiff to get off the push car and stop
it, and plaintiff, while endeavoring to do so, was struck by the
lever car and damaged, the injury was due to the gross negli-
gence of the section foreman, a fellow servant of plaintiff, for
whose negligence the company was not liable.

FROM the circuit court of Sunflower county.

HON. SYDNEY SMITH, Judge.

Givens, the appellant, was plaintiff in the court below and
the railroad company, appellee, was defendant there. From a
judgment in favor of the defendant plaintiff appealed to the su-
preme court.

Plaintiff, Givens, sued the defendant to recover damages for
personal injury alleged to have been caused by defendant's neg-
ligence.

Plaintiff, a member of the defendant railway company's
bridge gang, was returning from work on a push car with
Shields, the gang boss. The push car was propelled by a lever
car in charge of Sims, the second boss, and other members of
his crew. Upon slackening the speed of the lever car prepara-
tory to stopping, the two cars separated, and Sims ordered
plaintiff to get off the push car and stop it. While endeavoring
to execute the order, plaintiff was struck and injured by the
lever car. At the close of the testimony, the court gave a per-
emptory instruction for the defendant, holding that the case
was not within section 193 of the Constitution of 1890, provid-
ing that "every employee of any railroad corporation shall have
the same right and remedies for any injury suffered by him
from the act or omission of said corporation or its employees as
are allowed by law to other persons not employees, where the
injury results from the negligence of a superior agent or officer,
or of a person having the right to control or direct the services
of the party injured, and also when the injury results from the
negligence of a fellow servant engaged in another department

of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about a different piece of work."

*W. S. Chapman,* for appellant.

There is a wide difference in purpose and scope of employment between a railroad corporation and an incorporated construction company. A construction company is a kind of quasi-corporation, and belongs to that class of contractors classed as independent contractors, and is so safeguarded by the decisions of various states, that such companies generally escape liability for any act that they may commit in building railroads and certainly are not governed by the same rules that regulate railroad companies. Speaking of these independent contracts in Thompson on Negligence, Vol. 1, p. 614, § 672, Mr. Thompson says: "Several American courts hold that railroad companies are not liable for the unauthorized trespasses of independent contractors whom they employ to construct or repair their railroads or other works, where the relation of such contractors to the railroad company is such that an ordinary proprietor would not be liable in a similar case. It has been held that the fact that, under the contractor, the work is to be executed under the supervision of the chief engineer of the railroad company, does not take the case out of this rule; since this supervision is reserved merely for the purpose of securing direct results and not for the purpose of controlling the contractor in his method of procedure. These decisions seem to involve in many cases, a denial of justice to property owners through or along whose property railways are constructed. Railway companies, in building their roads, employ non-residents of the particular districts as contractors for that purpose. They are here today and away tomorrow. In addition to this, they are often insolvent. What is still worse, they are often composed of mere dummy corporations, organized by the railroad companies themselves for the purpose of escaping liability for wrong done in the construction

of the road.  As soon as these dummy corporations have served their purpose they are dissolved, and property owners who are injured by their trespasses are left remediless."

I think the error of the trial judge lay in not drawing the distinction between these two kinds of corporations.  I cannot conceive how sec. 193 of the constitution could be so construed as to take in an *ignis fatuus* corporation like a construction company.  The subject matter of the whole section has reference to the *employes of railroad corporations,* and is confined to that class of persons exclusively.  The immunity from liability for any wrongs that may be done by construction companies in the construction of railroads has not been interfered with or restricted in an way by the section referred to.  If it is contended that the language of the opinion rendered by the chief justice in the case of *Bradford Const. Co. v. Heflin,* 88 Miss. 314, carries out the idea that the employees referred to means only those who are engaged in transporting freight and passengers, that all other employees of a railroad company are not included in sec. 193 of the constitution, and that it is shown in the opinion in the *Heflin* case that it was the intention of the court to exclude employees injured except those running and connected with passenger trains, then the result would be that a considerable number of railroad employees would have no redress in the courts of the state for any wrongs inflicted on them by the negligence, however gross, of those who had the right to command them.  It is true that, on page 363, the following language is used: "It manifestly never was the purpose of the constitution makers in said sec. 193 to give to all employees of railroad corporations the remedies therein provided.  They meant such employees as were imperiled by the hazardous nature of the business of operating railroad trains.  The very ground upon which the United States supreme court all along held that such legislation was constitutional was that the nature of the business of operating railroad cars is inherently dangerous.  It would be absurd to hold that there was any inherent danger in

discharging the duties of ticket agent, or telegraph dispatcher, or many other officers in which employees of railroads are at work. It would be equally absurd to hold that employees of a railroad corporation engaged in the construction of a round house, or in any other work not at all connected with the operation of the cars, were engaged in work inherently dangerous. They would be in no more danger than any other like employee of any other master. In short, the reason which sustains said sec. 193 of the constitution being the inherent danger attending the actual operation of railroad trains, the remedy must be limited to those employees who such danger imperils."

It appears to me that the true meaning of the paragraph just quoted is plainly disclosed by looking to other portions of the said opinion, and the mention therein of dangerous employments' which would not include the class of employees contemplated by sec. 193; and also of certain employees belonging to railroad corporations, whose employment would not expose them to any danger whatever. For instance, a construction company or a mining company, or a logging company, or a lumber company might build a railroad, for the purpose of carrying on a separate business enterprise, and the employees of all of them, engaging in the business of transporting lumber by rail or using the tracks for carrying on the business of their employer might be imperiled thereby and the employment considered dangerous, and in reality might be as much as the work done by a real railroad company in handling a train on a track; and yet, the court says that if these things were true the construction company, mining company, logging company, or lumber company would not find any relief given to them under sec. 193 of the state constitution. So, it was held that the evidence in the case of the *Construction Co. v. Heflin* showed that Heflin was the servant of the construction company and not of the railroad company. See 88 Miss. 348 and 363.

The court also say that a certain class of employees of railroad corporations was not included in sec. 193, and mentions

those certain ones as follows: "A ticket agent, or telegraph dispatcher, or many other officers in which employees of railroads are at work." Also, "employees of a railroad corporation building a round house, or engaged in any other work not connected with the operation of the cars were not included in this section." I contend that the section boss and the hands and a bridge crew under the control of a foreman or chief would be included in sec. 193, and that such employees are therein protected, if through the orders of the ones over them they were injured through the negligence of their superiors.

I think that it was the intention of the court to make a distinction between construction companies and railroad companies, and to show that persons who could recover under sec. 193 of the constitution for injuries caused by the negligence of their superiors were those imperiled by the running of the trains, etc., of railroad corporations, and not the employees of construction companies and lumber companies and logging companies, although the danger to their employees might be of a similar nature, and the duties to be performed were of like kind. Another reason that gives to me an abiding faith that the *Heflin case* does not displace or overrule the *Morris case* is, that this court is not in the habit of overruling its former decisions indirectly, by stating something that seemingly, to some, might appear antagonistic to an opinion already rendered by it, and especially as the opinion in the one case followed so closely upon the heels of the other. In the case of *Morris v. Brookhaven, etc., R. Co.,* 88 Miss. at page 545, the court says, "It is hypercritical and overstrained interpretation to confine the language to the fellow servant who manually nailed on the strips, since it specifically charges that this was done by direction of the chief in command of all." The facts show, in that case, that the captain of the bridge gang directed a push car to be pushed beyond a certain point where he had stationed one of the bridge gang, and that this crew had, under the direction of the captain of the bridge gang, nailed to the sides of the push car strips three feet

longer than the material on it.   So, in the case at bar, it was
shown by the evidence of the witness for plaintiff that this bridge
gang, captain and all, were employees of the Southern Railway
Company in Mississippi, that they were on the tracks of the
Southern Railway Company in Mississippi with a push car in
front and a lever car in the rear and which lever car could be
stopped in an instant and that after a space of twenty-five yards
had intervened between the two cars the plaintiff was directed
by the captain of the bridge gang to get down and stop the push
car; he obeyed the orders of his superior officer, and got down
between the two cars and tried to stop it by holding to the back
end of the push car, taking the least dangerous position in en-
deavoring to obey the commands of the captain of the bridge
gang.  That he was not contributorily negligent is shown by the
fact that the lever car could be stopped at once; that there was
nothing to obstruct the view between the two cars, and that it was
an act of gross negligence on the part of the chief of the bridge
crew not to stop the lever car.   It is not to be presumed that the
court below instructed the jury to find for the defendant on the
ground that the plaintiff was guilty of contributory negligence;
but that the court believed from the opinion in the *Heflin* case
that it overruled the case of *Morris v. Brookhaven, etc., R. Co.*,
and that no employee could recover unless he was connected with
the running of a freight train or passenger train for injuries in-
flicted through the negligence of a superior agent or officer.   If
this construction is narrowed to that point, then a number of em-
ployees, who are exposed to dangers daily, and who aid in keep-
ing up the tracks of the railroad corporations, and of looking
after bridges that span rivers, are without remedy and are en-
tirely unprotected, and as there is no intimation in the *Heflin*
case that the principle and rule laid down in the *Morris case*
have been overruled or modified in any manner whatever, I am
strengthened greatly in the view I have here presented, which
to me seem to be the sensible and reasonable one, and in happy

accord with salutary legislation and wise and wholesome judicial interpretation of the laws of the land.

I come now to the core of the subject under discussion and that is, how far is the rule extended to include emlpoyees of railroad companies who can recover for injuries sustained by the negligence of a superior under the authorities as held by courts of last resort? Is the rule limited to those employees only who operate or assist in operating and running freight or passenger trains, or does it extend to and take in another class of employees who keep the road in repair and look to the welfare of the public in keeping the bridges and trestles in good and safe repair, and who, in performing these duties, must necessarily use hand cars, push cars and other appliances run on railroad tracks? In the line of employment the section boss who looks after the railroad track must of necessity employ men to do the work and use hand cars along the tracks of the railroad lying within his section. These people are within the zone of danger, although the danger may not be so great as those incurred by one connected with the running of a passenger or freight train. The same may be said in relation to the captain of a bridge gang and his crew whose work may lead all along the railway tracks within the state and he and his crew encounter dangers greater and more frequent than the ones operating a hand car only under a section boss. As, for instance, the case of *Morris v. Brookhaven, etc., R. Co.,* 88 Miss. 539, 41 South. 267, was decided in June, 1906, and it is inferable that the injury was sustained either in the latter part of the year, 1905, or the early part of 1906, and the case at bar, in August, 1907, proving beyond controversy that dangers do exist from the work engaged in and injuries are not infrequently inflicted upon employees of the class referred to through the negligence and carelessness of the superior in charge. See *St. Paul R. Co. v. Artery,* 137 U. S. 507.

*J. L. Williams,* on the same side.

This case should be reversed because the court erred in granting a peremptory instruction in favor of the defendant  To do this, the court held that sec. 193 of the state constitution, abrogating the fellow-servant doctrine so far as the employee of railroad corporations are concerned, does not extend to a member of a bridge gang engaged in keeping up the bridges on its line of railway, he being injured by being run over by a hand car through the negligence of a person having the right to control or direct his services.   But this holding would engraft an exception on the plain language of the constitution.   It was the evident intention of the constitutional convention to do away with what this court has aptly styled "the gross absurdity of the extreme application of the old common-law rule as to fellow servants, illustrated in this state in the cases of Lagrone and McMaster," and the constitution sets aside that rule as to every employee of a railroad corporation, where the injury results from the negligence of a superior agent or officer, or of a person having the right to control the services of the party injured. And this provision, being remedial, should be liberally construed in favor of the employee.   In the case of *Southern R. Co. v. Cheaves,* 84 Miss. 585, 34 South. 385, counsel for the railway company attempted to have this court read into this section the clause, "while such person is in the exercise of the superintendence intrusted to him;" but the court declined to adopt this view, saying through Chief Justice WHITFIELD: "It would be the most manifest departure from proper construction to give a narrow, restricting interpretation to these plain provisions in our organic law, framed with the view of expanding and enlarging the rights of injured employees, and abrogating in part the harsh rules of the common law on this subject.   It has been expressly held that all of these employers' liability acts are, in view of the subject of their passage, to be construed liberally in favor of employees.   Labatt's Master and Servant, vol. 2, § 639, through § 663."   And yet, the court below has restricted the ap-

plication of sec. 193, in the case at bar by reading into it this language: "But this shall not apply to employees injured by hand car accidents."

The court below fell into error by misconstruing the language used in *Bradford Construction Co. v. Heflin*, 88 Miss. 314, 42 South. 174, as follows: "This last proposition is entirely distinct from the proposition which we think it is proper to decide in this case, and that is that said sec. 193 of the constitution applies to the employees of railroad corporations proper, engaged as common carriers in the transportation of freight and passengers, and to such employees only when injured while doing work in some manner connected with the use and operation of the railroad." The last part of the above quotation, to wit: "and to such employees only when injured while doing work in some manner connected with the use and operation of a railroad," is the language that controlled the court below, for it held that a section hand or bridge hand was not engaged in work in any manner connected with the use and operation of a railroad, and therefore under that decision, the plaintiff could not recover.

The precise question presented for determination by this court is, was the plaintiff injured while engaged in work "inherently dangerous," or "in some manner connected with the use and operation of a railroad?"

The case at bar is on all fours with the case of *Morris v. Brookhaven, etc., R. Co.*, 88 Miss. 539, 41 South. 267. If the ruling of the court below is correct, however, the *Morris case* was overruled by the *Heflin case*. But if our contention is correct, then the *Morris case* and the *Heflin case* both announce the law correctly and this judgment must be reversed. If the construction given by the court below to the language of the *Heflin case* be correct, then it has placed this court in the awkward position of turning aside to write a few ages of dictum at the same time that they were disclaiming any intention of doing so; for certainly if the court meant to go to the extent that the

trial court gives them credit for they have made an announcement in the *Heflin case* that was not required in the case there presented.

It is evident that this court in the *Heflin case* followed the case of *Luce v. Railroad Co.,* 67 Iowa, 75, 24 N. W. 680; and that case is based on the Iowa statute, § 1307 of the Iowa Code of 1873, which gives a party the right to recover when such wrongs "are in any manner connected with the use and operation of any railway." And that is certainly as far as the court meant to go in the *Heflin case;* for the court there say: "We decline to anticipate anything. We decide only the case before us," which statement of the court makes it very clear to my mind that they intended to leave open for future decision, when the question should be presented, as to the meaning of the phrase, "in any manner connected with the use and operation of any railroad." *Larson v. Illinois Central R. Co.,* 91 Iowa, 81; *Payne v. Railroad Co.,* 54 Iowa, 223.

The *Heflin case* has recently been explained by *Mobile, etc., R. Co. v. Hicks,* 91 Miss. 273, 46 South. 360, which shows clearly that this court did not mean to overrule the *Morris case* by the *Heflin case,* and did not go so far as to hold that a section hand is not within the protection of sec. 193. That case holds that a section foreman killed by the derailment of a passing train is within the protection of sec. 193 of the Constitution, as construed by the *Heflin case.* Of course the court does not say that the plaintiffs would have been entitled to recover if Hicks had been killed by a passing hand car, for that point was not up for decision, and such an announcement would have been mere dictum. But certainly reason supports our contention, for although the casualties resulting from hand car accidents may not be as numerous, still they are frequent and just as disastrous to those so injured as injuries resulting from the running of trains of cars. And these accidents are frequent and disastrous enough to show beyond cavil that operating a hand car on a railway track is a business inherently dangerous. The *Hicks*

*case* is in perfect harmony. with all the decisions of the courts of of other states construing statutes similar to our law as it now stands. In the *Morris case* cited above, a member of a bridge gang was held entitled to recover when injured by the running of a push car under direction of a foreman in a manner remarkably similar in all essential respects to the case at bar. And the *Morris case* is in perfect harmony with the *Heflin case* and *Hicks case,* as announced by this court; with the cases above cited and decided by the supreme court of Iowa; and also with the case of *Railroad Co. v. Artery,* 137 U. S. 537; all of said cases construing laws identical with ours, so far as the question presented by this record is concerned.

*Percy, Moody & Percy,* for appellee.

Appellant does not contend that he was injured through the negligence of the appellee's vice-principal, or that the injury resulted from the negligence of a fellow-servant in another department of labor from appellant's, or from the negligence of a fellow-servant on another train of cars or engaged about a separate piece of work. The contention is that appellant was injured through the negligence of a superior agent or officer or one having the right to control or direct appellant's services. The contention of appellant's counsel is that section 193 of our state constitution of 1890 applies to him, first, because at the time appellant was injured he and the other men were engaged in operating hand cars, and opposing counsel contend that such work was in itself inherently dangerous within the meaning of the aforesaid section of the constitution. And reliance is placed by opposing counsel in the cases of *Payne v. Railroad Co.,* 54 Iowa, 223, 37 Am. Rep. 198; and *Larson v. Illinois, etc., R. Co.,* 91 Iowa, 81, 58 N. W. 1076; these cases construing Iowa Code 1873, § 1307. And learned counsel for appellant contend that section 193 of our Mississippi Constitution of 1890, is applicable, secondly, because, as they say, section 193 applies to all employees of a railroad company engaged in the

use and operation of a railroad, and that the use and oper-tion of hand-cars is as much the use and operation of a railroad as the use and operation of railroad trains within the meaning of that section, their reliance being based upon *Luce v. Railroad Co.,* 67 Iowa, 75, 24 N. W. 630; and *Railroad Co. v. Artery,* 137 U. S. 507, 34 L. Ed. 747, construing the above mentioned section of the Iowa code. Our answer to the foregoing is that our Mississippi supreme court has construed section 193 of our Mississippi Constitution of 1890 differently from the construction which they contend for. We further con-tend that even if they were right in their attempted construction of section 193 the appellant is still not entitled to recover.

This court has construed section 193 of our state constitution to apply only to the employees of railroad corporations proper; that is, to employes of railroad corporations engaged in the transportation of freight and passengers; which employees are brought into contact with the dangers incident to the actual operation of railroad trains, and who are injured while doing work in some manner connected with the use and operation of the railroad.

In the case of *Bradford Construction Co. v. Heflin,* 88 Miss. 314, 42 South. 174, this court in effect held that section 193 of our state constitution was limited to such railroads as are some-times known as "commercial railroads," engaged in the trans-portation of freight and passengers; and that it was never the intention of our constitution to give protection to any other than to such employees of railroad corporations who were imperiled by the hazard and nature of the business of operating railroad trains. The very ground upon which the supreme court held that such provision was constitutional was that the nature of the business of operating railroad trains is "inherently dangerous." Therefore, "the reason which sustains said section 193 of the constitution being the inherent danger attending the actual operation of railroad trains, the remedy must be limited to those employees whom such danger imperils." This court knew that

section 193 was framed so as not to render it objectionable to the United States supreme court as being in any way violative of the fourteenth amendment of our federal constitution. For this reason, our court held that when properly construed, section 193 applied to such railroads as were engaged in the transportation of freight and passengers, because this court knew that up to the time when the state constitution was adopted the supreme court of the United States had vindicated such classification upon the ground that the business of such corporations was inherently dangerous, and limited it to the employees of railroad corporations who were engaged in the actual operation of railroad trains because the United States supreme court at that time had only sanctioned such a classification. The case of *Railroad Company v. Artery, supra,* was decided after the adoption of our state constitution, and for this reason this court was evidently of the opinion that our state constitution framers did not have in mind this federal court decision.

In the later case of *Mobile, etc., R. Co. v. Hicks,* 91 Miss. 273, 46 South. 360, this court again construed section 193. The contention of appellees in that case was that the train was derailed through the negligence of the employees in charge of it, and that, as the deceased was engaged in a different department of service from that of the employees on the train causing the injury, section 193 applied, and hence that appellees should be entitled to recover. It was contended by appellant that the statute was made for the protection of those whose duties subjected them to the dangers of railroading, and that even though Hicks, the deceased, was killed through the negligence of a servant engaged in another department of labor in the actual operation of the train, the section did not apply to the case because Hicks was not himself engaged in such business at the time of his death. This court however held that the deceased was plainly out of the class of employees who, under section 193, were exposed to the perils of the operation of railroad trains, and that section 193 was intended to protect the employee, not

against what he himself may do, but what his co-employees in certain lines of labor are doing. The court distinctly stated that, "the inquiry is not whether he is at the time operating a train and thus exposing other employees to a peril, but whether in the discharge of his duties he is where the negligence of certain employees operating the train may injure him." The inherent danger, considered by the court, was not the danger arising from the use of hand-cars, but the danger arising from the actual operation of railroad trains. In the sphere of Hick's employment as a section foreman, he was required to work along the railroad track, and in addition to the other appliances furnished him for this work his force made use of hand-cars, both push and lever, and if such work, because it was done in the use and operation of a railroad was a "work inherently dangerous," or "work in some manner connected with the use and operation of a railroad," within the meaning of section 193, the same seems not to have been so considered by the very learned counsel for appellant and appellees, or seriously considered by the court in its decision.

The intention of this court, as expressed in the two decisions of *Bradford Construction Co. v. Heflin, supra,* and *Mobile, etc., R. Co. v. Hicks, supra,* was to protect and safeguard section 193 of our constitution, the organic law of our land, and to leave to the legislature the extension of its beneficent provisions to other corporations than railroads as the law-making body might see fit. The legislature of our state evidently so construed the *Heflin case, supra,* because it enacted, subsequently to the decision, Laws of 1908, ch. 194, providing that "every employee of a railroad corporation, and all other corporations and individuals, using engines, locomotives or cars of every kind or description whatever propelled by the dangerous agencies of steam, gas, electricity, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from an act or omission of such railroad corporation or others, or their employees, as are allowed by law

to other persons not employed." We therefore contend that under section 193, as construed in the cases cited, the appellant, Givens, was not an employee of a railroad corporation within the meaning of said constitutional section, and that the evidence fails to disclose that he was injured by an employee of such corporation within the meaning of such section.

Unless this court holds that the operation of hand-cars is a work inherently dangerous within the meaning of section 193, we still contend that the appellant, Givens, is not entitled to recover, even though the court should be of the opinion that he was engaged in work "in some manner connected with the use and operation of the railroad," because it does not appear that Givens was injured while doing work which brought him in contact with the actual operation of railroad trains. In short, our contention is that, even though the appellant may have shown that he belonged to the class of employees to whom the law affords a remedy, yet he has failed to show that the acts which occasioned the injury were of the class of acts for which a remedy was given. See *Smith v. Burlington, etc., R. Co.,* 59 Iowa, 73; *Malone v. Burlington, etc., R. Co.,* 61 Iowa, 36, 65 Iowa, 417; *Pearson v. Chicago, etc., R. Co.,* 47 Minn. 9, 42 N. W. 302; *Jennings v. Great Northern R. Co.,* 1 L. R. A. (N. S.), 696.

We further contend that Givens was not entitled to recover because it does not appear that, at the time he was injured, either he or any of his co-employees were engaged in working for appellee. At the time of the injury, Givens and his co-employees had quit work, and were going into the town of Itta Bena on hand-cars. It is not shown whether these hand-cars were furnished by the appellee for their use. The men were evidently going homeward for their own convenience and not in the work of the railroad company. *Benson v. Chicago, etc., R. Co.,* 80 N. W. 1050.

In view of the fact that the legislature has enacted a law which meets the views of counsel for appellant in their con-

struction of section 193, and in view of the further fact that the supreme court of the United States has not yet held that the use and operation of hand-cars is a work inherently dangerous, it would now hardly be wise to so construe section 193 as to endanger it.

In conclusion, if the liability of the appellant, Givens, must be established by proof and not by presumption, the judgment of the court below must be affirmed:

1. Because it does not appear that the appellant or any of his co-employees, by whose negligence it is claimed he was injured, were of that class of employees of the railroad company who, in the performance of the duties required of them, are brought into contact with the dangers incident to the actual operation of railroad trains within the meaning of section 193 aforesaid.

2. Because, even though it may be held that the appellant and his co-employees, by whose negligence it is claimed he was injured, were of that class of employees, yet it does not appear that at the time the appellant was injured either he or his co-employees, by whose negligence it is claimed he was injured, were at the time of the injury doing work in any manner connected with the use and operation of the railroad.

3. Because it does not appear that at the time appellant was injured either he, or his co-employees, by whose negligence it is claimed he was injured, were at the time of the injury engaged in any work whatever for the railroad company.

*Catchings & Catchings,* on the same side.

The testimony makes out a conclusive case of extreme negligence on appellant's part. He and Shields, whom he calls "the big boss," were riding on a car described as a "push car." A gang of co-laborers, together with one Sims (described as the "little boss") were riding on a hand-car described as a "lever car." There was no motive power to the "push car." The lever car was worked by the gang upon it by means of a lever,

and the push car was propelled by the lever car. The lever car was placed in contact with the push car so that, while they were moving, the push car was showed along ahead of the lever car. When they were approaching the town of Itta Bena, Sims, according to appellant's testimony, told appellant to stop the push car. Appellant's testimony is to the effect that "Shields and Sims instructed me to get down and stop the push car." He testified that he jumped down back of the push car so that he was between the push car and the lever car, and that while endeavoring to stop the push car the lever car ran against and upon him and injured him. His contention is that Shields and Sims were superior officers having the authority to give him the order to stop the push car, and that in obeying their order he was injured, hence that the company is liable to him in damages. It will however be noted that he does not state that Shields or Sims ordered him to stop the car in any explicit way or by any one certain method. His testimony simply is that he was ordered to get off the push car and stop it. He was free to exercise the method whereby he would obey this general order or command. He need not have gotten off in the peculiar and dangerous method adopted by him between the two moving cars. He was clearly guilty of contributory negligence such as should preclude his recovery of damages.

Even if the case had gone to the jury and the jury had found against appellee, the court below would necessarily have been compelled to set such verdict aside and grant a new trial. The contributory negligence of appellant is so obvious that the peremptory instruction in favor of the railroad company was manifestly correct, and the judgment of the court below should be affirmed.

Whitfield, C. J., delivered the opinion of the court.

The point most seriously pressed upon us by the learned counsel for appellant is that a hand-car is within the principle of section 193 of the Constitution of 1890. The cases of *Bal-*

*lard v. Cotton Oil Mill,* 81 Miss. 507, 34 South. 533, 62 L. R.
A. 407, 95 Am. St. Rep. 476, *Bradford Construction Co. v.
Heflin,* 88 Miss. 314, 42 South. 174, and *Mobile, etc., R.
Co. v. Hicks,* 91 Miss, 273, 46 South. 360, 124 Am. St. Rep.
679, have settled certain propositions beyond further debate
in this state. These propositions are as follows: First. That
section 193 of the Constitution of 1890 embraces alone commer-
cial railroads, railroads proper, carrying freight and passen-
gers, and not logging railroads or mining railroads, etc. Sec-
ond. That the only reason why section 193 can be upheld as
constitutional is, as held by the United States supreme court
in repeated adjudications referred to in the three cases, *supra,*
that such classification of such railroads proper can be properly
maintained only because of the fact of the inherent danger at-
tending the operation of such railroads by the highly dangerous
agency of steam; in other words, because such commercial rail-
roads do imperil the lives of their employees, by reason of the
inherent danger of the operation of such railroad trains. Third.
That even the employees of such railroad corporations proper
can only recover against such railroads where they are injured
by reason of the perils attending the operation of such commer-
cial railroads.

When we said in the case of *Bradford Construction Co. v.
Heflin,* 88 Miss., at page 361, 42 South., at page 182, that
"said section 193 of our constitution applies to railroad corpo-
rations proper which are engaged in the business of common car-
riers transporting freight and passengers, and to such employees
when injured whilst doing work in some manner connected
with the operation and use of the railroads," we meant by the
word "railroads" railroads proper—commercial railroads carry-
ing freight and passengers. To our minds the proposition that
a hand-car is inherently dangerous is one that cannot be sup-
ported on reason or principle. Hand-cars are no more inher-
ently dangerous than other modes of transportation not in any
way connected with railroads proper, and not used on the rails of

railroads proper. We are all clearly of the opinion that a hand-car, therefore, is not within the reason which supports section 193 of our constitution as a constitutional provision not in conflict with the fourteenth amendment to the constitution of the United States. It is plain that the legislature of this state so understood the three cases which we have above referred to, because the legislature of this state in Laws 1908, p. 204, ch. 194, extended the protection of section 193 to a new class of employees, and provided therein that "every employee of a railroad corporation and all other corporations and individuals, using engines, locomotives or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, shall have the same rights and remedies for an injury suffered by him from the act or omission of such railroad corporation or others, or their employees, as are allowed by law to other persons not employed." But this act is prospective, and, if properly within the principle of section 193 of the constitution as to hand-cars, or cars operated by lever power, furnishes no protection to the injury of the person in this case, who was injured prior to the passage of this act.

Learned counsel for appellant, in an exceedingly strong brief, has referred us to many decisions, chiefly in Wisconsin, Minnesota, Texas, Kansas, and Alabama, holding that a hand-car is within the various acts of the legislature in those particular states. But none of those acts in any of those states are couched in the same language as is contained in section 193 of our constitution. The Kansas act is set out in *Union Trust Company v. Thomason,* 25 Kan. 3, and is as follows: "Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage." The court in that case held that it embraced hand-cars. That may have been a proper construc-

tion of the statute, as to which we say nothing; but that statute is not identical with section 193 of our constitution. In the case of *Kansas City, etc., R. R. Co. v. Crocker,* 95 Ala. 412, 11 South. 262, the statute of that state, Alabama (sec. 2500 subd. 5, of the Code of 1886), provided: "When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, switch, car or train upon a railway"—and the court properly held that the language, "any person who has in charge or control any car upon a railway," embraced a hand-car. That statute, which is very much like the English employer's liability act, as we have in the three opinions, *supra,* pointed out, is broad enough to cover a hand-car. In the case of *Benson v. Chicago, etc., R. Co.,* 75 Minn. 163, 77 N. W. 798, 74 Am. St. Rep. 444, the action was brought under Laws Wis. 1893, p. 268, ch. 220, which provided: "Every railroad or railway company operating any railroad or railway, the line of which shall be in whole or in part within this state, shall be liable for all damages sustained within this state, by any employee of such company, without contributory negligence on his part . . . while any such employee is so engaged in operating, running, riding upon, or switching passenger or freight or other trains, engines, or cars, and while engaged in the performance of his duty as such employee, and when such injury shall have been caused by the carelessness or negligence of any other employee, officer, or agent of such company in the discharge of, or for failure to discharge his duties as such." All that the court held in that case was, construing that statute, that "or other cars"—that is, other cars than switching, passenger or freight cars—was broad enough to cover a hand-car, which decision we think perfectly sound on that statute. In the case of *Perez v. San Antonio & A. P. Ry. Co.,* from the court of civil appeals of Texas, in 28 Tex. Civ. App. 255, 67 S. W. 137, the act there in question, article 4560*f,* Sayles' Ann. Civ. St. 1897, provided: "Every

person, receiver, or corporation operating a railroad or street railway the line of which shall be situated in whole or in part in this state, shall be liable for all damages sustained by any servant or employee thereof while engaged in the work of oper-. ating the cars, locomotives or trains of such person, receiver or corporation, by reason of the negligence of any other servant or employee of such person, receiver or corporation, and the fact that such servants or employees were fellow servants with each other shall not impair or destroy such liability." The court held in that 'case that, a hand car was within that statute, and that the plaintiff was engaged, in that case in the work of operating a car within that statute, which is not identical with ours. The court thought the words of that statute broad enough to include a hand car. Whether correct or not in its holding, the judgment being, as is noted, by the Court of Civil Appeals, and not the supreme court of Texas, it is sufficient to say that the statute is not identical with our section 193 in its language. The cases, therefore, from Texas, Minnesota, Wisconsin, and Alabama, are not at all controlling with us, because some of the statutes are markedly different from our section 193, and the statutes of Texas and Kansas are certainly not identical.

The state upon whose decisions the learned counsel for appellant chiefly relies is the state of Iowa, and the case which he presses upon us most strongly is the case of *C., M. & St. P. Ry. Co. v. James Artery,* which was first decided by the circuit court of the United States for the Northern District of Iowa, and afterwards affirmed by the United States Supreme Court. See 137 U. S. 507, 11 Sup. Ct. 129, 34 L. Ed. 747. The statute of Iowa in that case construed, first passed in 1862, and afterwards modified by Code 1873, § 1307, is as follows: "Section 1307. Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employees of the corporation, and in consequence of the willful wrongs, whether

of commission or omission, of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." The language of that statute is markedly different from our section 193, in that it provides for damages suffered by any employee "when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed." This language is extremely broad and very much stronger than section 193 of our Constitution. The Supreme Court of the United States reviewed in that opinion quite a number of opinions of the supreme court of Iowa, and followed, naturally, the construction put upon that statutue by the supreme court of Iowa, and it is true, added, what it was wholly unnnecessary to add, that this was obviously the proper interpretation of the statute; but the United States supreme court expressly sets out in full the facts of said case, which facts show, as it held, that within the meaning of the Iowa statute the injury was "directly connected with the use and operation of the railway." In that case the injured party was sitting on a hand car, holding a shovel on the top of the rail, with a view to cleaning the snow off the top of the rail as the hand car moved, in order to make the railway safe. Under these circumstances under the broad language of that statute, giving the right to an injured employee when the wrong was in any manner connected with the operation and use of any railway, it was very properly held that the plaintiff in that case came within that statute. But the language of that act is markedly different from and far broader than the language of our section 193; and not only is this true, but it is further true that the plaintiff in this case was not injured while doing any work connected with the operation of this railroad proper.

In Labatt on Master and Servant, vol. 2, in an elaborate note, to wit, note 4, p. 2114, the author has collected, with discrimina-

tion and care, all the cases from the state of Iowa, showing what employees are held to be within that statute, and what not. We call special attention to the case of *Luce v. Chicago, etc., R. Co.,* 67 Iowa, 75, 24 N. W. 600, and other cases cited in the note at page 2118, and *Malone v. Burlington, etc., R. Co.,* 65 Iowa, 417, 21 N. W. 756, 54 Am. Rep. 11, a very carefully considered and correct opinion, in which it was held, as stated in the syllabus that: "An employee of a railroad company, whose duty it is to wipe engines, open and close the doors of an engine house, and remove snow from a turntable and connecting tracks, is not, by by reason of such duties, in any proper sense employed in the operation of the railroad, within the meaning of section 1307 of the Code; and for an injury received, while performing such duties, through the negligence of a co-employee, he cannot recover against the company, under the provisions of said section, notwithstanding he may have other duties to perform which do pertain to the operation of the road. *Deppe v. C., R. I. & P. Ry. Co.,* 36 Iowa, 53, distinguished, as having been decided under a different statute."

We think, after a most careful consideration of this case and all the decisions that have been cited, especially in view of the very careful construction of our section 193 of the Constitution of 1890, which we have made in the three cases first referred to in this opinion, that a hand car in no proper sense be held to be inherently dangerous, within the principle saving section 193 of our Constitution from unconstitutionality. So to interpret our constitutional provision would be to expose that provision, in our judgment, to the condemnation of the supreme court of the United States, on the reasoning of that court in many cases, resting the constitutionality of statutes like section 193 of our Constitution of 1890 on the ground of the inherent danger attending the operation of a steam railroad proper, operated by the highly dangerous agency of steam. The construction which we have heretofore put upon this section of our Constitution was so placed upon it to secure

to the employees of railroad corporations proper the guaranties which that section provides, and not to extend its spirit and its purpose beyond what we have said they were, in order to avoid any overthrow of section 193, as offending against the fourteenth amendment to the Constitution of the United States. That section, as we have pointed out, in its last clause, authorized the legislature to extend its benefits in a proper constitutional way to other classes of employees, and in the act of 1908, to which we have referred, the legislature has made the attempt to do this. We are, therefore, on this branch of the case, clearly of the opinion that a hand car is not within the principle of section 193 of our Constitution.

The case of *Norfolk & Portsmouth Traction Co. v. A. C. Ellington, Adm'r, etc.,* 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117, is a Virginia case, very ably reasoned, in the course of which WHITTLE, J., speaking for the court, held that an electric street railway was not within their constitutional provision, which was tantamount to holding that it was not inherently dangerous, since their constitutional provision, like ours, rests upon the inherent dangerousness of the operation of steam railroads. The opinion is a masterly one, and this holding is strongly persuasive of the correctness of our view that under our Constitution, from which the Virginia Constitution is taken, a hand car is not inherently dangerous.

The case of *Morris v. Railroad Co.,* 88 Miss. 539, 41 South. 267, is supposed by learned counsel for appellant to have been decided under section 193 of the Constitution; but this is a mistake. That section was not referred to in the briefs of either counsel in that case, nor in the opinion of the court. If that case had been decided under section 193 of the Constitution, it was manifestly overruled by the *Heflin case, supra,* which was decided after the *Morris case.* We do not understand the learned counsel for appellant to contend at all in this case that the plaintiff was not a fellow servant with Sims and the rest of the crew on the lever car with Sims. Manifestly, under the decisions of

this court for years and years prior to the decision in the *Morris case,* the plaintiff was such fellow servant with Sims and those working with Sims; and it is perfectly clear that the negligence which caused his injury was the gross negligence of Sims in not having the lever car held at a proper distance from the push car whilst the plaintiff was stopping the push car. The decision in the *Morris case* was rendered upon the theory that the act of negligence which injured the party in that case was the act of the superintendent of the gang. This is shown by the language of the opinion delivered by Mr. Justice CALHOON. In other words, it was held in that case that the injured party was injured directly by the negligence of the superintendent who was held to be, in that case, the vice principal of the company.

But this case cannot be aided by the *Morris case,* in that view. The facts of this case, on this precise point, distinguish it plainly from the *Morris case.* Here Givens was not injured in consequence of the order of Sims, ratified by Shields, the foreman of the crew, treating it, as plaintiff's counsel does, as the order of said foreman Shields. It was a perfectly proper order to have been given, and a perfectly proper order to have obeyed, and Givens was not injured because of his obedience to that order; but he was injured manifestly by the gross negligence of Sims, the subboss, a mere subordinate. It was this negligence of Sims, or those with him on the lever car, in not checking up that car, which caused the injury to the appellant; not the order of Shields to the appellant to get off and stop the push car. In the *Morris case* the injury was inflicted by the direct order of the superintendent himself. Here the order of the superintendent had nothing to do with the injury—was a mere condition of the injury, the *causa sine qua non;* but the gross negligence of Sims was the *causa causans,* and his act imposed no liability on the company, since he was a mere subordinate and fellow servant, in our opinion, with the appellant. It is the misfortune of the appellant in this case that his injuries should have occurred at a time prior to the passage of the act attempt-

ing to make the railroad liable for injuries inflicted in the operation of hand cars.

On Const. § 193, and law, as it stood when this injury occurred, and under both Constitution and said laws as they have been interpreted in the three cases, *supra,* cited at the beginning of this opinion, the action of the learned court below was correct, and the judgment is affirmed.                    *Affirmed.*