## JENNIE BOYD v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### In Banc, March 28, 1913.

1. **DAMAGES: Sec. 5425: Verdict in Excess of $2000: Matters Considered.** In arriving at a verdict in excess of $2000 under Sec. 5425, R. S. 1909, the jury are not restricted to a consideration only of the circumstances attending the negligence, unskillfulness or criminal intent of the corporation causing the death of plaintiff's husband; the legislative intent was that the jury, in exercising its discretion as to the amount for which a verdict in excess of $2000 should be rendered, should also consider the necessary injury sustained by plaintiff.

2. **————: ————: ————: Word "Penalty:" Substance and Effect of Statute.** While the word "penalty" inserted in the amendment of 1905 to present Sec. 5425 might of itself indicate a legislative intent that the recovery was to be penal and not compensatory, it is the substance and effect of a statute, rather than its form, that is to be considered in determining whether it is penal.

3. **————: ————: ————: Discretion.** When courts or juries are clothed with power to exercise discretion in the performance of duties cast upon them by the law, the right to acquire a full knowledge of the facts upon which that discretion must operate is necessarily implied. Where the statute makes the amount a plaintiff can recover depend upon "the discretion of the jury," that necessarily implies that they should be made fully acquainted with the facts of the case; for a discretion, in such case, means freedom to do what is fair, just and right, in view of the circumstances and enlightened principles.

4. **————: ————: Both Penal and Compensatory: Earning Capacity of Deceased: Loss to Plaintiff: Negligent Act of Defendant.** A recovery under Sec. 5425, R. S. 1909, is penal up to the sum of $2000, but the extent to which a plaintiff may recover, if at all, in excess of that sum up to $10,000,

is remedial and compensatory; and the jury and court, where a sum in excess of $2000 is demanded, in exercising the wise and just discretion which the statute authorizes, should consider evidence of the age, condition of health and earning capacity of the deceased, and the consequent loss to the plaintiff, together with the circumstances attending the killing. [Overruling, so far as conflicting, Young v. Railroad, 227 Mo. 307; and Boyd v. Railroad, 236 Mo. 54.]

5. ————: **Under Secs. 5425 or 5426: Election by Instruction.** Where plaintiff's petition attempts to state a cause of action under both Secs. 5425 and 5426, R. S. 1909, she elects to base her recovery on Sec. 5425 by asking an instruction fixing the amount of her damages at not less than two nor more than ten thousand dollars.

*Held,* by GRAVES, J., with whom FARIS, J., concurs, that the principal act of negligence charged being that of the foreman in running his hand-car upon the fixed time of the regular train which it met and where the section-hand was killed, the negligence alleged does not bring the case under Sec. 5425, but under Sec. 5426, if Honea v. Railroad, 245 Mo. 621, and 247 Mo. 542, was correctly ruled.

6. ————: **Hand-Car is a Car: Under Sec. 5425.** Under Sec. 5425, R. S. 1909, authorizing recovery for death caused by the negligent operation of any "locomotive, car or train of cars, or any street, electric or terminal car or train of cars, . . . or any stage coach, automobile, motor-car or other public conveyance," a hand-car is a "car."

7. **NEGLIGENCE: Collision Between Hand-Car and Train: Necessity to Prove Negligence in Operation of Train.** Where a hand-car and a freight train, on a very foggy morning, met in a narrow cut, and a track laborer on the hand-car was killed, it is not necessary to prove negligence in the operation both of the freight train and hand-car; the petition charging negligence on the part of the foreman in charge of the hand-car carrying the track laborers, proof that the act of the foreman in placing said laborer in such a perilous position that he could not escape being killed by the freight train established defendant's liability.

8. ————: ————: **Assumption of Risks.** Where plaintiff's husband, a track laborer, riding on a hand-car, was killed when the hand-car, going at a rapid rate, on a foggy morning, in a narrow cut and curve, met a rapid freight train running on schedule and not seen until the hand-car was within 120 feet of it, and the hand-car was under the control of the foreman of the track laborers and he had been warned of the danger of a collision, but ignored it, plaintiff's husband did

not assume the risk, and upon proof of these facts she was entitled to go to the jury.

*Held*, by WOODSON, J., dissenting, that, owing to the dense fog that shrouded the track and train, plaintiff's husband assumed the risk.

9. ———: ———: **Instruction: Assuming That Deceased Was Using Ordinary Care.** An instruction telling the jury that if they find the act of the foreman of the hand-car carrying plaintiff's husband, "in going around the curve in a heavy fog without stopping to listen or sending a man forward to ascertain whether or not a train was coming, was such an act as a person of ordinary care and prudence as such foreman would not have done, then they should find for plaintiff," was erroneous, the principal act of negligence alleged being the running by the foreman of a hand-car on the fixed time of a regular train coming from the opposite direction, and the answer pleading contributory negligence on the part of plaintiff's husband in failing to jump from the hand-car and in negligently remaining on the track until killed, and there being evidence that the other men on·the car did jump and escape injury and that deceased did not use ordinary care. This instruction ignores that issue, and directs the jury to find that the alleged negligence of defendant's foreman in running the hand-car into the cut was the cause of deceased's death. The instruction assumes that plaintiff's husband was without negligence and did try to avoid being struck after he discovered his peril.

*Held*, by GRAVES, J., concurring in the result, that the instruction does not cover any negligent act charged in the petition.

*Held*, by WOODSON, J., dissenting, that the law did not impose upon the defendant the duty to send a man in front of the hand-car to notify those thereon of the approaching train.

10. ———: ———: ———: **Ignoring Pleaded Defenses.** The omission from plaintiff's instructions of defenses pleaded by the answer is mere non-direction, and is not error. If defendant wishes his defenses to be specifically called to the attention of the jury, it is its duty to ask proper instructions embracing them.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman*, Judge.

REVERSED AND REMANDED.

*R. T. Railey* and *Scott & Bowker* for appellant.

(1) The petition in this case, in one count, attempts to state a cause of action both under Sec. 5425 and 5426, R. S. 1909, and for this reason appellant's demurrer and motion to elect should have been sustained. Casey v. Railroad, 205 Mo. 721; Peters v. Railroad, 150 Mo. App. 721; King v. Railroad, 130 Mo. App. 368.    (2) It is the duty of the section men to look out for the approach of trains and for their own safety while on or near the track. Degonia v. Railroad, 224 Mo. 564; Evans v. Railroad, 178 Mo. 517; Ring v. Railroad, 112 Mo. 220; Sissel v. Railroad, 214 Mo. 515; Williamson v. Railroad, 139 Mo. App. 481; Van Dyke v. Railroad, 230 Mo. 259; Hitz v. Railroad, 152 Mo. App. 687.    (3) Where the servant has the same knowledge as the master the servant assumes the risk or is guilty of contributory negligence in working in a dangerous place or with a dangerous instrumentality. Hirsch v. Freund Bros. Co., 150 Mo. App. 162; Jewell v. Bolt & Nut Co., 231 Mo. 176.    (4) There was evidence in this case to support the answer in the pleas of assumption of risk and contributory negligence. Jewell v. Bolt & Nut Co., 231 Mo. 176; Sissel v. Railroad, 214 Mo. 515; Degonia v. Railroad, 224 Mo. 564; Maynard v. Railroad, 155 Mo. App. 352; Nivert v. Railroad, 232 Mo. 626; Gunnochio v. Railroad, 155 Mo. App. 163; Evans v. Railroad, 178 Mo. 517.    (5) Under Sec. 2864, R. S. 1899, now Sec. 5425, R. S. 1909, the only actionable negligence provided for is negligent acts in the actual operation of a train or cars, etc., therefore plaintiff was not entitled to recover under said section under the facts stated in her pleadings or instructions to the jury. Casey v. Railroad, 205 Mo. 721; Higgins v. Railroad, 197 Mo. 300; Gray v. Railroad, 157 Mo. App. 92; Peters v. Railroad, 150 Mo. App. 721; Anderson v. Railroad, 196 Mo. 465; Cuelsi-

ton v. Railroad, 140 Mo. 63; Crumpley v. Railroad, 98 Mo. 34; King v. Railroad, 98 Mo. 235; Anderson v. Railroad, 196 Mo. 464.   (6)  Sec. 5425, R. S. 1909, under which a recovery was held in this case, is a purely penal statute, and the court erred in admitting testimony as to the wages of deceased, the number of his children, his age and expectancy, and in instructing the jury thereon.  Young v. Railroad, 227 Mo. 307; Casey v. Transit Co., 205 Mo. 721; Gray v. Railroad, 157 Mo. App. 92; Ervin v. Railroad, 158 Mo. App. 1; King v. Railroad, 130 Mo. App. 368; Casey v. Transit Co., 116 Mo. App. 235; Adams v. Railroad, 67 Vt. 76; Marshall v. Railroad, 46 Fed. 269; Crohn v. Telephone Co., 131 Mo. App. 313; Nicholas v. Kelly, 159 Mo. App. 20; Moyes v. Railroad, 158 Mo. App. 461; Richmond v. Railroad, 97 Ala. 289; Childress v. Railroad, 141 Mo. App. 667.  (7) The court erred in giving instruction 1 in behalf of the plaintiff for the reason it predicated a right of recovery in the plaintiff, without requiring the jury to find the negligence provided for in the instruction was the proximate cause of the injury and death of plaintiff's husband.  The jury was permitted by the instruction to return a verdict against the defendant for certain alleged acts of negligence, without finding they caused the death of the decedent.  This was error.

*Edwin L. Moore, John H. Taylor,* and *Mathew Mc-Bride* for respondent.

(1)  Plaintiff's petition states a cause of action under Sec. 2864, R. S. 1899, as amended by the Act of 1905, p. 135, now Sec. 5425, R. S. 1909.  Boyd v. Railroad, 236 Mo. 54; Peters v. Railroad, 150 Mo. App. 721.  (2)  The doctrine that it is the duty of section men to look out for the approach of trains and for their own safety while on or near the track does not apply to a section man riding on a hand-car going to

and from his work by direction of the foreman. Schroe-
der v. Railroad, 108 Mo. 322; Honea v. Railroad, 245
Mo. 621; Boyd v. Railroad, 236 Mo. 80. (3) The de-
ceased was not guilty of contributory negligence.
Schroeder v. Railroad, 108 Mo. 322; Adams v. Rail-
road, 74 Mo. 533; Dickson v. Railroad, 124 Mo. 151;
Pratt v. Railroad, 139 Mo. App. 502; Clark v. U. I. &
F. Co., 234 Mo. 436; Boyd v. Railroad, 236 Mo. 54.
(4) The deceased was not guilty of contributory neg-
ligence nor did he assume the risk. Schroeder v. Rail-
road, 108 Mo. 322; Briscow v. Railroad, 130 Mo. 521;
Philpot v. Railroad, 196 Mo. 321; Lee v. Railroad, 112
Mo. App. 372; Gibson v. Bridge Co., 112 Mo. App.
597; Pratt v. Railroad, 139 Mo. App. 502; Dickson v.
Railroad, 124 Mo. 151; Burkard v. Rope Co., 217 Mo.
466; Dean v. Railroad, 156 Mo. App. 639; Clark v. U.
I. & F. Co., 234 Mo. 436; Boyd v. Railroad, 236 Mo.
54; Honea v. Railroad, 245 Mo. 621. (5) A hand-car
is a car within the meaning of Sec. 5425, R. S. 1909.
Peters v. Railroad, 150 Mo. App. 727; 3 Elliott on
Railroads, sec. 1354; Boyd v. Railroad, 236 Mo. 54.
(6) Sec. 5425, R. S. 1909, under which recovery was
had, is both penal and compensatory and testimony as
to the number and ages of his children, the wages he
received, his age, and expectancy was properly ad-
mitted and the jury instructed thereon. Boyd v. Rail-
road, 236 Mo. 82; Hartnett v. Railroad, 162 Mo. App.
554; Hegberg v. Railroad, 164 Mo. App. 548. (7) In-
struction 1 correctly defines the law of the case. Boyd
v. Railroad, 236 Mo. 92; Henry v. Railroad, 76 Mo.
293; Montgomery v. Railroad, 181 Mo. 498. Plaintiff
in good faith offered instruction 1 approved by the
highest court of this State. Defendant offered no in-
structions, and cannot now complain. Morgan v. Mul-
hall, 214 Mo. 462; Schuepbach v. Gas Co., 232 Mo. 611;
Sec. 1850, R. S. 1909; Sec. 2082, R. S. 1909; 2 Thomp-
son on Trials, sec. 2341.

BROWN, J.—Action for damages. Plaintiff had judgment below for $10,000 and defendant appeals.

By her petition plaintiff demands judgment for $10,000 against defendant for the alleged negligent killing of her husband, Charles J. Boyd, on July 29, 1905.

Deceased was an employee of defendant, working with an extra gang of track laborers, and at the time of his death was riding on a hand-car to his place of work. This is the second appeal in this case. A full copy of plaintiff's petition will be found in 236 Mo. 64, et seq. It is unnecessary to re-state the substance of said petition here.

Defendant pleaded contributory negligence and assumption of risk. It also attacked the constitutionality of section 5425, Revised Statutes 1909, but the constitutional issues tendered have been abandoned.

The evidence shows the plaintiff's husband (Charles J. Boyd) was employed by defendant during a period of three weeks prior to July 29, 1905, working just north of the town of Liberal, Missouri, in surfacing the track of defendant's road.

He was working under a section foreman by the name of Lee Mead. Mead left Liberal on the morning of July 29, 1905, at about the hour of seven o'clock, using two hand-cars to transfer his crew of men to a point on defendant's road some three miles north of Liberal. While the hand-cars were passing through a cut one and three-fourths miles north of Liberal they were met by one of defendant's freight trains known as the local freight, and plaintiff's husband was by said train run over and killed.

There was a heavy fog at the town of Liberal and along defendant's road on the morning of July 29, 1905. Two witnesses for plaintiff testified that the aforesaid local freight was due to arrive at Liberal from the north just after seven o'clock. One of them

gives the time for the arrival of said train at 7:05 a. m., and another at 7:20 a. m.

All of plaintiff's witnesses state that a train came through Liberal from the north over defendant's road between six and seven a. m. on July 29th. Witnesses did not know what train it was, but one of them testified that he suggested to Mead (the foreman) that it was not the local freight, but, inferentially, Mead seems to have thought it was, though he was not sworn as a witness.

Mead did not try to find out what train it was which had passed through just before he and his crew started with their hand-cars. There was no telegraph operator at Liberal station, and it does not appear how Mead could have ascertained the whereabouts of approaching trains had he tried to do so. He simply proceeded with his crew to his work as had been his custom for three weeks. There was evidence to the effect that Mead had not been stopping and listening, or sending a flagman ahead, to discover if there were trains approaching before running his hand-cars through the cut where plaintiff's husband was killed. Witnesses could not remember of any other morning when there was such a heavy fog as prevailed on the morning of July 29, 1905. The defendant in its answer admits the existence of the heavy fog recited in plaintiff's petition and testified to by the witnesses.

All the witnesses agree that the fog was so heavy that they could not see a train more than 150 feet. Boyd (plaintiff's husband) was riding on the rear end of the front hand-car, and the foreman (Mead) and one Tom Mulligan were on the front of said hand-car. When they were approaching the cut where Boyd was killed, Mulligan told the foreman that they ought to have a flagman, that it was a good morning "to get caught." The foreman made no reply, but proceeded with his hand-cars and men into the cut.

Four witnesses testified to the circumstances attending the killing of Boyd. Their evidence is substantially the same, except that some of them were not looking at Boyd when he got off of the hand-car.

The hand-car was running about eight miles an hour when it came in sight of the freight, which latter was running thirty miles an hour. Neither the section men nor the foreman observed the approaching freight train until it was within 120 feet of the front hand-car. Upon discovering the approaching train one man jumped on the brake of the hand-car, and two jumped off in front, grabbing the front handles of the car and making an effort to pull it off the track before it had fully stopped. They succeeded in getting part of the hand-car off the track when the freight train struck only the handles of the rear end thereof. A witness who was applying the brake on the rear hand-car saw Boyd jump off the rear end of the front car and make an effort to catch the rear handles thereof. He (Boyd) failed to catch the handles of the car and fell upon the track. He made an effort to rise and fell again, at which instant the rear hand-car passed partly over his body, and the oncoming freight train collided with this rear hand-car, knocking Boyd sixty feet down the track, killing him instantly.

One of plaintiff's witnesses testified that Boyd fell upon his back, and another that he fell face downward. It does not appear whether or not he was injured by the rear hand-car, nor is that material, as the defendant admits in its answer that Boyd was killed by the freight train.

One Harry Cooper testified that he had been a section foreman on defendant's road for five years and was still working for defendant at the time of the trial. He testified that it was the duty of such foreman, when his men were on the hand-car, to keep a lookout for trains; that defendant's agent who em-

ployed him (Cooper) directed him to "stop at any hazardous place and listen, and, if necessary, to go around the curve and see and satisfy ourselves that there were no trains coming close enough but what we could come around in safety." This direction seems not to have been given to said witness until after the collision which resulted in Boyd's death. Witness stated that he always considered it his duty in times of fog or when a train was expected, to stop his car and ascertain by listening or sending a flagman ahead whether a train was near before starting through a cut.

Plaintiff's husband was thirty-nine years of age, in good health, and earning $1.40 a day when killed. He was living with the plaintiff (his wife), by whom he left five small children, one of them being born a few months after his death.

The defendant introduced no evidence and asked no instructions, except a general demurrer at the close of plaintiff's evidence.

For reversal defendant relies upon the following alleged errors: (1) That the court erred in admitting evidence of the age, condition of health and earning capacity of deceased and the number of his children, and instructing the jury to consider that evidence in making up their verdict. (2) That plaintiff's petition attempts to state a cause of action under both section 5425 and section 5426, Revised Statutes 1909, and, therefore, plaintiff should have been compelled to elect which one of said sections she would rely upon for recovery. That plaintiff's petition does not state facts sufficient to support a recovery under section 5425, Revised Statutes 1909 (Death from negligent operation of locomotives, cars, etc.). (3) That it was the duty of plaintiff's husband as a section hand to look out for defendant's trains and for his own safety. (4) That there was evidence to sustain defendant's plea of assumption of risk and contrib-

utory negligence, and that said defenses should not have been ignored in plaintiff's instructions.

## OPINION.

I.   Defendant's first assignment calls for a construction of section 2864, Revised Statutes 1899, as amended by Laws 1905, p. 135, now section 5425, Revised Statutes 1909.

The court, over defendant's objection, admitted evidence tending to prove the age, condition of health and earning capacity of plaintiff's husband at the time of his death; also evidence as to the number of minor children left by said husband.  The court also, at the request of plaintiff, gave the following instruction on the measure of damages:

·Statute Penal and Compensatory.

"2.   The court instructs the jury that if you find for the plaintiff you shall allow her a sum not less than $2000 and not more than $10,000, in the discretion of the jury, and in determining the amount you will allow her you may take into consideration the pecuniary loss occasioned to the plaintiff by the death of her husband, and you may also take into consideration the facts constituting negligence on the part of the defendant causing the death; and in considering the subject of her pecuniary loss you may consider what would have been the value of her support from her husband from the time of his death during the time he would probably have lived and supported her, and you may also consider the additional burden, if any falls upon her, for the support of her minor children by reason of his death."

If, as defendant contends, section 5425 is wholly penal in its nature, then it was error to admit said evidence and give said instruction numbered 2.

Prior to the amendment of 1905 said section 5425, supra, had often been adjudged to be a penal statute.

It was accordingly held that parents of a minor son whom they had emancipated, and upon whose earnings they had no claim, could maintain an action against a railroad company for negligently causing such minor's death. [Matlock v. Railroad, 198 Mo. 495; Philpott v. Railroad, 85 Mo. 164.] The amount of recovery under said section was immovably fixed at $5000, and a party entitled to recovery for the death of a husband, wife, child, etc., could not waive a part of the penalty and sue for a less sum than $5000. [Casey v. Transit Co., 205 Mo. 721.]

This court has several times announced the doctrine that said section 5425 possessed compensatory features. [Philpott v. Railroad, 85 Mo. 168; Coover v. Moore & Walker, 31 Mo. 574; King v. Railroad, 98 Mo. 235.] However, the penal nature of the statute as it existed prior to 1905 has been quite uniformly held to overshadow its compensatory features, and the amount of recovery, when a recovery was allowed at all, was fixed at $5000 regardless of the earning capacity or the age of the party killed.

In 1905, said section was amended by striking out of the same the words: "shall forfeit and pay for every person or passenger so dying the sum of $5000" and in lieu of the words thus stricken out the following words were inserted: "shall forfeit and pay as a *penalty*, for every such person, employee or passenger so dying, the sum of not less than two thousand dollars and not exceeding ten thousand dollars, in the *discretion* of the jury."

The question is, did this amendment convert said section into a compensatory statute, or leave it wholly penal in its nature as it had theretofore existed?

In the recent case of Young v. Railroad, 227 Mo. 307, the amendment of 1905, heretofore quoted, was assailed on the ground that it was unconstitutional; and in upholding its constitutionality, VALLIANT, J., in speaking for Division No. One of this court, stated:

"The words, 'as a penalty' inserted by the amendment add nothing to the meaning or effect of the section; we have always held it a penal statute."

It was undoubtedly the intent of the General Assembly to continue the section now under consideration as a penal statute in so far as it authorized a recovery of not less than $2000 for the killing of a human being by the means and through the negligence, unskillfulness or criminal intent of the parties or corporations designated in said section 5425, but the more serious issue is what facts are juries allowed to consider in arriving at a verdict in excess of $2000.

It might be urged that they are to consider only circumstances attending the negligence, unskillfulness or criminal intent of the party or corporation causing the death for which recovery is sought, but it would be much more reasonable to suppose it was the legislative intent that, in exercising its discretion as to the amount for which a verdict in excess of $2000 should be rendered, the jury should also consider the necessary injury sustained by the party seeking the recovery.

The insertion of the specific word "penalty" in the amendment of 1905 furnishes some reason for the contention that the recovery was intended to be penal and not in any way remedial or compensatory in its nature. However, "it is the substance and effect of the statute, rather than its form, that is to be considered in determining whether it is penal." [36 Cyc. 1183.] Blackstone says that in amending laws the old law should be first considered; second, the mischief which the old law failed to prevent; and, third, the remedy necessary to make the old law complete and effective.

If the General Assembly considered this rule in 1905, it found a statute which permitted a recovery of *only* $5000 by a widow whose husband was killed through the criminal intent of a railroad company or its officers in the operation of its cars or trains. Evi-

dence that the man killed was young and highly skilled in some useful occupation and was earning ten dollars, or even one hundred dollars, per day, could not be received to increase the verdict above $5000. On the other hand, if the man killed through the mere negligence of a railroad company, unaccompanied by any wantonness or criminal intent on its part, and though such party killed was sick or so old that he possessed no earning capacity and was a charge upon his family, the recovery by his wife under the old law could not be less than $5000. The lawmakers are supposed to have known of the highly inequitable results which the old law produced, and in amending that law so that the recovery might be reduced to $2000 or increased to $10,000, it would most naturally base such sliding scale of recovery upon the age and earning capacity of the party killed.

If they desired to reduce the recovery below $5000 or increase it above that sum solely on account of the mitigating or aggravating circumstances attending the killing, it would have been the most natural course for the lawmakers to have specifically directed that the lower amount of $2000 should be awarded for the death of parties through ordinary acts of negligence, and the larger sum of $10,000 for death caused by acts of gross negligence or criminal conduct. No such guide for the jury is found in the statute as amended.

The language of the amendment authorizing the jury to exercise its discretion in fixing the amount of the verdict, if above the sum of $2000, and the failure to prescribe any rule for the exercise of such discretion, casts a serious doubt upon the meaning of the word "penalty" as used in said section for the first time in said amendment of 1905. It would be absurd to say that the Legislature believed juries so infallible that they could render correct verdicts without a knowledge of the facts upon which their discretion must operate; so we have a right to infer that by the

use of the broad word "discretion" it was intended that the jury should be fully acquainted with the facts of each case, to the end that they might be prepared to exercise a wise discretion—a discretion tending to promote justice.

In the case of State ex rel. Meinzer v. Diveling, 66 Mo. l. c. 379, it was said: "When the terms of the law are so ambiguous as to create a doubt, recourse may be had to the occasion of the provision, the mischief complained of, and the remedy sought to be applied by the lawmaker. When there can be no question as to the intent, it may be followed, though not strictly according to the letter of the law."

In Corrigan v. Kansas City, 211 Mo. l. c. 650, this court said: "In ascertaining the meaning of a law, whether organic or statutory, it is always permissible to consider the consequences of any construction proposed. In obedience to this wise and just rule of construction, this court has many times held that it is not to be presumed that unjust or unreasonable results are to flow from the law; and it should not be construed so as to accomplish such results if its terms will permit of an interpretation that is just and reasonable." [See, also, Plum v. Kansas City, 101 Mo. 525, and Lamar Water & E. L. Co. v. City of Lamar, 128 Mo. 188.]

When courts or juries are clothed with power to exercise discretion in the performance of duties cast upon them by the law, the power to acquire a full knowledge of the facts upon which that discretion must operate is necessarily implied. Below we give some of the definitions of discretion required to be exercised by courts and other judicial bodies:

"Where something is left to be done according to the discretion of the authority on whom the power of doing it is conferred, the discretion must be exercised honestly and in the spirit of the statute, otherwise the act done would not fall within the statute.

'According to his discretion,' means, it is said, according to the rules of reason and justice, not private opinion." [1 Stroud's Judicial Dictionary (2 Ed.), p. 542.]

"DISCRETION. The decision of what is equitable, judicious, or right, in view of and guided by the circumstances of the case and the wisdom of the magistrate, unfettered by specific rules of positive law." [1 Abbott's Law Dictionary, p. 385.]

"DISCRETION. A liberty or privilege allowed to a judge, within the confines of right and justice, but independent of narrow and unbending rules of positive law, to decide and act in accordance with what is fair, equitable, and wholesome, as determined upon the peculiar circumstances of the case, and as discerned by his personal wisdom and experience, guided by the spirit, principles and analogies of the law." [Black's Law Dictionary (2 Ed.), p. 375.]

The issues now under consideration incidentally arose, but were not decided by this court, in the case of Murphy v. Wabash Railroad Company, 228 Mo. 56. In the case of Young v. Railroad, 227 Mo. 307, Division One of this court, speaking through Chief Justice VALLIANT, said that the recovery to be had under section 5425, as amended in 1905, was wholly penal, and, consequently, the jury in fixing the amount of the penalty could only consider whether the conduct of defendant which caused the death "arose from mere inattention or was willful, wanton or reckless." Division Two of this court, speaking through ROY, C., when this cause was here upon the first appeal, announced that the jury might and ought to consider the age, health and earning capacity of deceased, as well as the value of the support his wife would have received from him during the time he probably would have lived; and also the additional burden cast upon her by his death in caring for and supporting her minor children.

Upon a full consideration of this case In Banc we are convinced that it was the intention of the General Assembly by the amendment of 1905 to leave the provisions of section 5425, supra, penal in their nature, so far as said section fixes the amount of recovery at not less than $2000, but where a plaintiff, as in this case, seeks to recover under said section a larger sum than $2000, the jury or court in preparing itself to exercise a wise and just discretion should receive evidence of the age, condition of health and earning capacity of the party killed, and the consequent loss to the plaintiff thereby, together with the facts and circumstances attending the killing, for which damages are sought to be recovered.

In other words, a recovery under section 5425, Revised Statutes 1909, is penal up to the sum of $2000, but the extent to which a plaintiff may recover, if at all, in excess of $2000 under that section is remedial and compensatory. It follows that if this action is based on said section 5425, Revised Statutes 1909, the admission of the evidence complained of and the giving of plaintiff's said instruction numbered 2 based on said evidence did not constitute reversible error. The cases of Young v. Railroad, 227 Mo. 307 and Boyd v. Railroad, 236 Mo. 54, in so far as they are in conflict with the foregoing interpretation of said section 5425, supra, are overruled.

II. It is contended by defendant that plaintiff's petition attempts to state a cause of action under both sections 5425 and 5426, Revised Statutes 1909, and therefore, plaintiff should have been compelled to elect as to which of said sections she relied upon for her recovery. It is evident that plaintiff did, by her conduct, elect to base her recovery upon section 5425, by requesting the court to give instruction numbered 2, which permitted a recovery for a sum not exceeding $10,000. At the date when

Hand-Car.

plaintiff's husband was killed a recovery could not be had under section 5426, supra, for a larger sum than $5000. [Laws 1907, p. 252.]

The decision of the point raised by defendant's second contention turns upon a proper construction of the aforesaid section 5425. If that sec-. **Hand-Car Is a Car.** tion authorizes a recovery for death caused by the negligent operation of a hand-car, then this action is under its provisions. On the other hand, if a hand-car is not a car within the purview of said section 5425 authorizing a recovery for death caused by the negligent operation of "any locomotive, car or train of cars, or any street, electric or terminal car or train of cars, . . . or any stage coach, automobile, motor car or other public conveyance," then plaintiff's action is not under that section.

If a hand-car when operated on a railroad track is a *car* within the letter and spirit of the foregoing statute, then plaintiff's action is clearly founded on section 5425; otherwise, her petition only states a cause of action under section 5426, supra.

At first impression it might appear that the word *car* as used in said section 5425 was only intended to apply to cars used in transporting passengers, but the language of the statute does not warrant such a construction. The statute includes locomotives, construction cars and terminal cars, which are seldom or never used for the transportation of passengers. Webster defines a car as "a vehicle adapted to the rails of a railroad."

Statutes of other States quite similar to ours have been held to embrace hand-cars under the general designation of "cars." [Perez v. Railroad, 28 Tex. Civ. App. 255; Benson v. Railroad, 75 Minn. 163; Railroad v. Crocker, 95 Ala. 402; Railroad v. Artery, 137 U. S. 507.] The above cases and the statutes they construe are fully digested in Boyd v. Railroad, 236 Mo. 78, 79.

In a very recent case the Supreme Court of Alabama held that a motor car used upon railroad tracks in an underground mine was a car within the purview of the statute of that State which permits the recovery of damages for the negligent operation of a ''car or train upon a railroad.'' [Woodward Iron Co. v. Lewis, 171 Ala. 233.]

In Freeman v. Shaw, 126 S. W. 53, the Texas Court of Civil Appeals held that pushing a car by hand for the purpose of distributing ties was a part of the operation of a railroad. So it appears that the speed of a car or the manner in which it is propelled does not determine whether it can properly be classified as a car.

We hold that the provisions of said section 5425 embrace the right of recovery for death caused by the negligent operation of hand-cars.

Nor was it necessary under the pleadings and facts of this case to prove that defendant's employees in charge of the freight train which killed Boyd were negligently operating said train. If the act of defendant's section foreman in operating the hand-car placed Boyd in such a perilous position that he could not escape being killed by the freight train, then the defendant is liable.

III. It is further insisted that plaintiff cannot recover because it was the duty of her husband as a section hand to look out for defendant's freight train and keep out of its way, regardless of any negligence of defendant's foreman. In support of this contention defendant cites: Degonia v. Railroad, 224 Mo. 564; Evans v. Railroad, 178 Mo. l. c. 517; Ring v. Railroad, 112 Mo. 220; Sissel v. Railroad, 214 Mo. 515; Williamson v. Railroad, 139 Mo. App. 481; Van Dyke v. Railroad, 230 Mo. 259; and Hitz v. Railroad, 152 Mo. App. 687. In each of the cases above cited the employee killed was not

Duty of Section-Hand.

riding upon a hand-car, but was working, walking or standing upon a railroad track with no fogs to obstruct his view, and with full opportunity to observe and get out of the way of approaching trains.

The facts are entirely different in the case at bar, where the alleged negligence of defendant's section foreman carried the man to a point where he had only a fraction more than two seconds to get off of a rapidly moving hand-car and out of the way of a still more rapidly approaching freight train.

If Boyd possessed the right or the physical power to stop the hand-car and get off the track before entering the cut those facts do not appear in the evidence. It was proved that defendant's foreman was warned by another employee of the danger he would incur by going into the cut without first ascertaining if a train was approaching; and that the foreman paid no attention to such warning.

It is apparent that plaintiff's husband could not have stopped the hand-car and alighted therefrom without first, in some way, overcoming the will of the man that defendant had placed over him as a foreman. Under the facts as pleaded and proved, the issue of negligence or no negligence on the part of defendant was for the jury. [Schroeder v. Railroad, 108 Mo. 322.]

In the case of San Antonio & Aransas Pass Railway Co. v. Stevens, 37 Tex. Civ. App. 80, it was held that a member of a bridge gang while riding on a hand-car under the direction of a foreman did not assume the risk of colliding with a train. In the same case it was also stated that: "It cannot be questioned that to run a hand-car, freighted with human life, on the time of a passenger train, over the same track, is negligence of the most culpable character."

Assumption of Risk.

There is no evidence in the case at bar which would have justified the trial court in holding as a matter of law that plaintiff's husband assumed the risk of a collision with defendant's freight train at the time and place where he was killed.

IV.   Further error is assigned in the action of the trial court in giving instruction numbered 1, which is as follows:

"1.   The court instructs the jury that it is charged in the petition and admitted in the answer that Charles J. Boyd, mentioned in the evidence, was, at the time of his death, the husband of the plaintiff, Jennie Boyd. That it is charged in the petition and admitted in the answer that the defendant on the 29th day of July, 1905, was a railroad corporation running its line of road through Barton county, Missouri. That it is admitted by the defendant that on the 29th day of July, 1905, plaintiff's said husband, Charles J. Boyd, was a section hand on defendant's road in Barton county, Missouri, and was killed on that day. It is also admitted by the parties that on the date aforesaid there was a heavy fog prevailing at the place where said Boyd was killed. It is admitted as charged in the petition that Lee Mead was defendant's foreman of an extra gang at the time and place of said Charles J. Boyd's death. Now, if the jury find from the evidence that the act of the foreman in going around the curve on a hand-car in a heavy fog without stopping to listen or sending a man forward to ascertain whether or not a train was coming, if they find he did this, was such an act as a person of ordinary care and prudence as such foreman, would not have done, then they should find for the plaintiff. Unless you so find your verdict will be for the defendant."

This instruction is assailed on the ground that it assumes the death of Boyd was caused by the alleged negligent act of defendant's section foreman in carry-

ing him (Boyd) into the railroad cut on a hand-car where he was run over and killed, without requiring the jury to find that said alleged negligence was the cause of the killing. We find that the defendant's contention on this point is sound and constitutes reversible error. Defendant in its answer pleaded contributory negligence on the part of Boyd, in that he carelessly and negligently jumped off of the rear end of the hand-car and remained on the track until killed, when he had time after the discovery of the approaching train to alight from the hand-car and go to a place of safety.

As all the other employees working on the same hand-car with Boyd did escape from the track without injury we find that there was some evidence upon which the jury could have found that deceased was not using ordinary care, and under the evidence in this case whether he did use ordinary care was for the jury.

Whether it was Boyd's duty to jump off of the rear end of the hand-car and assist in removing it from the track, whether there was a more safe place for him to have gotten off, or whether he had time to select a safe place to alight, were all questions for the jury, and, therefore, they should not have been commanded by the instruction given to find that the alleged negligence of defendant in running the hand-car into the cut was the cause of Boyd's death.

Plaintiff's instruction numbered 1 is also assailed on the further ground that it ignores the defenses pleaded by defendant. We do not think that objection can avail defendant. The omission to refer to defenses pleaded was mere non-direction, and if defendant thought its defenses should have been specifically called to the attention of the jury, it was its duty to ask instructions which would have accomplished that result.

In civil cases the law does not require the plaintiff or the defendant to request instructions. If they pre-

fer to try a case without instructions they may do so, unless the court gives instructions of its own motion, which it is not required to do. [Sec. 1987, R. S. 1909; Coleman v. Drane, 116 Mo. l. c. 394; Brown v. Globe Printing Co., 213 Mo. l. c. 652; Minter v. Bradstreet Co., 174 Mo. 444, l. c. 491.] However, when a plaintiff procures instructions to be given they must correctly state the law and not assume that disputed facts are admitted to be true. [Neas v. Railroad, 138 Mo. App. 484.]

For the error contained in plaintiff's instruction numbered 1, the judgment is reversed and the cause remanded for new trial. *Lamm, C. J.,* and *Walker* and *Faris, JJ.,* concur in paragraphs one and two, and in the result; *Bond* and *Graves, JJ.,* concur in paragraph one and in the result, *Graves, J.,* in separate opinion in which *Faris, J.,* concurs; *Woodson, J.,* dissents in opinion filed.

## CONCURRING OPINION.

GRAVES, J.—I concur in what Brother Brown says as to the construction to be given to section 5425, Revised Statutes 1909. I agree with him that such statute in its make-up is penal so far as the minimum of $2000 is concerned, and compensatory as to the amount which may be found above that sum, and that it is not only proper but mandatory to introduce evidence to enlighten the jury in the exercise of their discretion, so far as the damages in excess of $2000 are concerned. I also concur in the result of his opinion, but do not agree with him as to some other matters. To my mind, instruction numbered 1 for the plaintiff does not cover any negligent act charged in the plaintiff's petition. I concur with Brother WOODSON wherein he says that the failure to send a man forward does not constitute negligence. He, however, overlooks, in my judgment, the failure to stop and listen before en-

tering upon the curve in the fog—this on the theory
the evidence shows a duty in that regard. But this
matter is not charged as negligence in the petition and
of course should not be in the instruction. The peti-
tion so far as material reads:

"That at a point about one and three-fourths miles
north of the said town of Liberal there is a sharp curve
in the railroad track of defendant. That it was the
duty of said Mead to see that the rear hand-car was
not run in so close proximity to the front hand-car,
on which the said Charles J. Boyd was, as to endanger
the men riding thereon, and that it was the duty of
said Mead to see that the said hand-cars were not run
upon the railroad track so as to come in collision with
any train running on said railroad, and it was the duty
of said Mead to so inform himself as to the movements
of trains on said railroad track, that said hand-cars
should not be run so as to conflict with any such trains.
That it was the duty of said Mead, before entering said
curve, to discover whether or not a train was coming
thereon.

"But the said Mead on the 29th day of July, 1905,
being then and there in charge of said hand-cars as
aforesaid, and the said Charles J. Boyd being engaged
in running the front hand-car aforesaid under the su-
perintendence, control and management of him, the
said Mead, did run, operate and manage the said front
hand-car so carelessly, negligently, recklessly and un-
skillfully on said railroad northward from the said
town of Liberal on the time of a train, which the said
Mead then and there knew or ought to have known
was approaching from the north, and which he the said
Mead then and there knew or ought to have known was
liable to collide with the said hand-car going north,
and the said Mead carelessly, negligently, recklessly
and unskillfully caused and permitted said rear hand-
car to follow the front hand-car at a distance of about
sixty feet, and carelessly, negligently, recklessly and

unskillfully failed to discover whether or not a train was coming before entering said sharp curve aforesaid with the hand-cars aforesaid, that, at a point about one and three-fourths miles from the said town of Liberal and just after entering the sharp curve aforesaid, an engine and train of cars owned and operated by the defendant coming south on said track, without any notice of its approach, was about to collide with said hand-car aforesaid on which said Boyd was employed, and while said Boyd was endeavoring to escape said collision and said approaching rear hand-car he was run over and killed by said engine and train of cars of defendant aforesaid.''

The petition therefore undertakes to specifically charge the duties of the foreman Mead, and also undertakes to charge specifically his neglect of duty or negligence, but the stopping and listening for an approaching train or the sending of a man forward is neither alleged to be a duty nor an act of negligence upon his part. Instructions must follow the issues made by the pleadings, and when specific acts of negligence are charged the plaintiff must recover upon one or more of such specified acts of negligence and none other. It matters not that other acts of negligence may crop out in the case through the evidence, unless the petition is permitted to be amended to meet the proof. So I say this instruction numbered one does not present the case pleaded.

II. There is another question in this case. Does the negligence pleaded bring the case under section 5425, or is it under section 5426? It would seem that the principal act of negligence charged is that the foreman Mead was running his hand-car upon the fixed time of a regular train. This was the gravamen of the charge in Honea v. Railroad, 245 Mo. 621, and 247 Mo. 542, and that cause was brought under the compensatory section and not under what is now section

Boyd v. Railroad.

5425. We held that the case was properly brought under the compensatory section, now section 5426, and mulcted the railway company in damage to the extent of $10,000. If that judgment is right, the principal negligent act in this case does not bring the case under section 5425. My brothers who were so firmly fixed in opinion in the Honea case should furnish some satisfactory solution of this question. It matters not under which section of the statute the petition states a case, it does not effect the question of remanding the cause, and for that reason I have, as above indicated, concurred in the result.

## DISSENTING OPINION.

WOODSON, J.—I dissent from the majority opinion for the reason that even if it be conceded that Boyd was killed in the manner stated in the opinion, nevertheless, his widow is not entitled to a recovery for the reason, in my opinion, he was killed by one of the risks incident to his employment.

To my mind, with no intention to reflect upon court or counsel, it is the height of nonsense to hold that it was the duty of the defendant to send a man on foot in front of a hand-car to notify those on the car of approaching trains, for the reason: First, that he could not have walked as fast as the car would ordinarily have run, and consequently he would have been left far behind. Second, if it was the duty of the defendant to reduce the speed of the car to the gait of the man, then what, pray, would have been the use of the car; why not all of them walk? They could have reached their destination with pick and shovel as quickly or quicker without the car, than with it, under such conditions. And, third, because, conceding that the foreman had sent a man ahead, what good would have resulted therefrom? None earthly, I respectfully submit; for the simple reason that a great engine and

train of cars could have been seen and heard much farther by the men on the hand-car, than they could have seen and heard the man sent forward.

Moreover, had he been sent forward under the circumstances, it would have taken as long or longer for him to have notified the men on the car, that the train was approaching, than it would have taken them to have removed the car after they received the danger signals given by said person.

Such conduct on the part of a railway company might with great similarity be likened unto an astronomer going out to view the sun with a tallow candle, or an army officer sending out a picket with a fire-cracker to explode, as a warning, that the sixteen-inch siege guns were being fired in the front.

Either the deceased assumed the risk, or the defendant was guilty of negligence as a matter of law for running the hand-car at all under the circumstances; and I apprehend the latter suggestion will not be contended for, because the more foggy the day, the greater would be the duty of the company to see that its roadbed and track were in good condition, which could only be promptly ascertained and repaired by its section men, traveling on a hand-car, which moves much faster than a man does on foot, but not too swiftly to prevent them from discovering defects therein, if they exist; while the train men, even if they could have seen such defects, which of course they could not have done, on such a day, running at the speed at which trains ordinarily move, would not have given them sufficient time in which to have stopped the train and thereby have averted the damage awaiting the train, crew, freight and passengers.

For the reasons stated, in my opinion, the evidence fails to show any negligence on the part of the defendant and consequently it failed to show any liability on the part of the company.

I, therefore, dissent from the majority opinion.