# DECISIONS

## OF THE

# SUPREME COURT OF FLORIDA.

### JUNE TERM, A. D. 1877.

16  147
f59  550

JAMES G. GIBBS, ET AL., APPELLANTS, VS. GEORGE F. DREW, GOVERNOR, APPELLEE.

1. Franchises which are incorporeal hereditaments of an intangible nature, are not embraced within the meaning of the terms "lands or tenements" in the act regulating the proceeding of unlawful detainer. *Hence:*

2. A railroad being a public work, the possession of which is necessarily attended by the right and duty to use and employ the franchises granted by the sovereign in connection with it, an action of unlawful detainer does not lie to recover possession of a part thereof, as this involves the right to and the public duty of exercising these franchises.

Appeal from the Circuit Court for Gadsden county.

This is a proceeding under the unlawful detainer statute brought by the appellants in the Circuit Court of Gadsden county against the respondent. The appellants, in their complaint, alleged that the respondent, "as Governor and successor of Dennis Eagan, in the property hereinafter mentioned, unlawfully and against their consent, withholds from them the possession of certain real estate, known and described as follows: All that portion of the Jacksonville, Pensacola and Mobile Railroad lying west of the Quincy depot and extending thence westward to the Apalachicola river, with the appurtenances lying and being in the county of Gadsden and State of Florida." They prayed restitution of possession and their damages.

There was an appearance, and at the ensuing regular term, a motion by defendant to dismiss upon the following grounds :

1. This action does not lie or obtain against the defendant, as Governor, to recover possession of the Jacksonville, Pensacola and Mobile Railroad west of Quincy.

2. The action does not lie or obtain to recover possession of a railroad.

3. There is no description in the complaint of any property recoverable by the action brought.

After hearing, this motion was granted, and judgment entered dismissing the complaint. From this judgment this appeal is prosecuted. The error here assigned is that the Circuit Court erred "in granting the defendant's motion and dismissing the plaintiffs' suit."

*John W. Malone* for Appellants.

*R. B. Hilton* and *R. H. M. Davidson* for Appellee.

Judge Bryson, of the Third Circuit, and Judge Dawkins, of the Fifth Circuit, sat in this case in place of the Chief Justice and Justice VanValkenburg, who were disqualified.

Mr. Justice Westcott delivered the opinion of the court.

While the statute regulating this special proceeding provides, " that if it shall appear to the court at the return day of the summons that the defendant has been duly served with said summons, agreeable to the requirements of this act, it shall proceed, without further pleadings in writing, to empanel a jury for the trial of the cause," still, in the very nature of things, the defendant may, in case he wishes to raise pure questions of law, adopt some method so to do without the intervention of a jury. The method here adopted was a motion to dismiss. To this no objection has been

taken, and we think it is proper. This motion must be treated as a demurrer.

There is but one question which we think necessary to consider in the disposition of this case. That question is, what is the legal signification of the term "railroad" in this pleading, and do the terms "lands or tenements," as used in the statute regulating this proceeding, embrace railroads as defined? This complaint must be construed most strictly against the appellants. If the term "railroad" embraces something not included in the terms "lands or tenements," and that something is not the subject of this proceeding, then that is an end of the matter.

As the term highway imports in law a road, the use of which is in the public, so the legal signification of the term "railroad" is not only a road or way on which iron rails are laid, but a road as incident to the possession or ownership of which important franchises and rights affecting the public are attached. This is unquestionably one of its significations. If it was the purpose of the appellants to recover something other than this, or to recover a road to which no such incidents were attached, the description should be so framed as to bring the subject-matter of the action within the terms of the statute, that is, the metes and bounds should be stated according to the usual and well-recognized legal methods of boundary.

There is nothing here which would authorize us to conclude that this road has been the property of a corporation now dissolved, having lost its franchises by any of the various methods by which this may happen. We therefore treat it as a railroad to which belong the franchises usually attached to such a public work. The franchises which usually appertain to such a public work are incorporeal hereditaments as contra-distinguished from "land," which is a corporeal hereditament; and while the term "tenements" embraces some franchises, still this term as used in the statute

must, from the nature of the proceeding, be restricted to tenements upon which an entry can be made, and of which there can be tangible possession. (6 Litt., 184.) "Restitution ought only to be awarded for the possession of tenements visible and corporeal," says Baron Comyns in treating of this subject. (Comyns' Dig., Tit. Forc. Entry, Letter. D, 7.)

The term "tenements" is used in the English statutes upon this subject, and yet, says Sergeant Hawkins, (1 Hawk. P. C., ch. 28, sec. 31, page 502,) "it seems clear that no one can come within the danger of these statutes by a violence offered to another in respect of a way or such like easement which is no possession." The general rule under the English statutes is, that this proceeding is restricted to the recovery of the possession of hereditaments for which a writ of entry would lie at common law or by statute. (Coke Litt., 343; Lamb Ins., 153.) If this be so, and that it is so cannot be doubted, the remedy cannot exist for the recovery of the possession of a public work to which is attached important prerogative franchises, rights, and duties resulting from a special grant by the sovereign, and which cannot be included in any proper definition of the term "tenements" as used in this statute. But even if it be admitted that the right to the possession of a railroad as thus defined can be made the subject of this proceeding, it certainly must appear affirmatively, must be alleged in the complaint that the party is the owner of the franchises of a public character which exist in connection with it. These cannot be thus separated. There is no such allegation here. Again, the franchises which belong to the owners of the J., P. & M Railroad exist necessarily as appurtenant to the ownership or possession of the *whole line of road*, and not to the ownership or possession of *a part*. In the very nature of things, therefore, the plaintiff cannot be entitled to these franchises, as he claims an unlawful detainer of only a part of this

road.    The claim is for a " portion of the Jacksonville, Pensacola and Mobile Railroad." ·

Our conclusion is that a railroad is a public work, the possession of which is attended with the right and duty to use and employ the franchises granted by the sovereign in connection with and as appurtenant to it, and that the proceeding of unlawful detainer does not lie to recover the possession of a part of such public work, as this necessarily involves the right to these franchises, and generally, that franchises appertaining to a railway being incorporeal hereditaments, intangible in their character, are not embraced within the terms "lands or tenements " in the act regulating this proceeding.

Judgment affirmed.