## NEW DEEMER MFG. CO. v. KILPATRICK.

[92 South. 71. No. 22643.]

RAILROADS. *Logging road held not a "railroad," within statute requiring plantation crossings and cattle guards.*

The provisions of section 4058 of the Code of 1906 (section 6686 of Hemingway's Code), providing statutory penalties for failure of a railroad company to construct necessary plantation roads and cattle guards or stock gaps, apply to the ordinary railroads carrying persons or property for hire, and are not applicable to logging roads privately operated by lumber companies or private persons.

APPEAL from circuit court of Neshoba county.
HON. J. R. EAST, Special Judge.

Action by T. T. Kilpatrick against the New Deemer Manufacturing Company. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

*Paul Dees,* for appellant.

The first contention of appellant is that there is no legal basis or statute for damages against defendant for a failure to construct and maintain cattle gaps or stock guards and crossing for plantation roads as alleged in plaintiff's declaration, since these items are claimed only as a violation of the requirements of railroad companies in the way of a penalty. Unless this suit, insofar as this element of same is concerned, can be maintained to secure the penalty of two hundred and fifty dollars as imposed by statute against railroad companies for a failure to erect suitable crossings and stock gaps then no damages are claimed in the declaration. It is our contention that to this extent the suit is unwarranted and the statutory penalty of two hundred and fifty dollars for a failure to erect and maintain stock gaps or cattle guards and crossing for plantation roads only has application to railroad companies, and in the sense of the law there is no cause of action against this defendant.

There is but one statute fixing a penalty such as is claimed and sued for in this case, being section 4058, Code of 1906, section 6686 Hemingway's Code, and that statute is limited to railroad companies, the language of the same being as follows: "It is the duty of every railroad company to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land; and to make and maintain convenient and suitable crossings over its tracks for necessary plantation roads, etc.—." There is nothing in the declaration of plaintiff to warrant the bringing or maintaining of this suit so far as the penalties are concerned since it nowhere appears in the declaration or proof that the defendant is a railroad company and therefore liable to plaintiff under this statute, and if not under this statute there is no authority for same. True it is that it is alleged in plaintiff's declaration that defendant constructed its line of road across plaintiff's land and that log trains were operated

over same by the agency of steam, but this fact falls far short of demonstrating the defendant is a railroad company or corporation in contemplation of law or in contemplation of our legislature when the act referred to above was passed.   It is the contention of appellant that there is a vast distinction between a railroad company, as contemplated by the legislature when it passed the act under consideration, and this defendant.   There are many obligations and burdens imposed by the law upon railroad companies that have absolutely no application to sawmills operating dummy lines for the purpose of conveying logs to their plant; there are likewise many privileges granted by law to railroad companies not granted sawmills operating their own little dummy lines to haul logs to their plant from the woods, and after a diligent search we fail to find any case where the burden here sought to be imposed upon this appellant has ever been imposed upon sawmill companies.   It is a matter of common knowledge that if the burden here sought to be imposed upon this defendant is permissible under our law it would render the operation of a logging road prohibitive.   It is shown by the testimony in the record of this case that the line of railroad across plaintiff's land was there for only a few weeks. Had it been the purpose of our law makers to impose such a liability upon this defendant, and other plants of similar character, certainly our statute would have included sawmills operating dummy lines instead of restricting the statute to railroad companies.

Evidently the verdict of the jury in this case was intended to award the penalty for a failure upon the part of the defendant to erect a suitable stock gap or cattle guard on the east side of plaintiff's land, or a failure upon the part of defendant to provide a suitable crossing across plaintiff's plantation road, but we submit that the verdict could not be based on the latter because the proof shows the crossing was provided within a reasonable time after the dummy line was constructed across the said road. In either event, according to our contention, the verdict is

unwarranted and without authority of law for the reason above stated. True it is that plaintiff alleges a failure to erect two other stock gaps, one where the line of defendant enters his land and where it makes its exit, but the proof of plaintiff's own witnesses conclusively show to the jury that suitable gaps or guards were constructed and maintained at these two points. It is also shown by the defendant and undisputed by plaintiff that the east side of plaintiff's land was the eastern boundary of defendant's right-of-way, so we again say that the verdict of the jury was based on the failure of defendant to erect and maintain a suitable guard or gap at this point.

This court has held without exception in construing this statute that it is highly penal and therefore must be strictly construed. Adhering to this rule and the long line of authorities adhering to the same, we respectfully and confidently submit that there is no liability upon the part of defendant in this case which would warrant the instructions granted plaintiff and upon which the jury found the verdict. It will be noted by the court that every instruction granted appellee was based on the idea that the jury was warranted in finding a verdict as a penalty for failure to erect stock gaps or cattle guards and suitable crossings, and for the reason there is no statute or law warranting such a verdict we submit that each and every instruction granted plaintiff was erroneous. Again we say that it is perfectly manifest that the two hundred and fifty dollars awarded plaintiff resulted from the erroneous charge granted plaintiff in reference to stock gaps because no other element of damage was established by the proof upon which any verdict could have been rendered.

In support of the contention of appellant that it is not a railroad company in the sense that it is liable to appellee in this suit we call the court's attention to Words & Phrases, First Series, vol. 7, p. 5909 where it is said: "A company to which a charter was granted for the purpose of 'carrying on the general business of sawing all kinds

of lumber by machinery run by steam or such power as may be best adapted to the business, to place that lumber on the market,' etc., is not a railroad company, though it had authority by its charter to buy, lease, sell, use and operate locomotives and railroad engines on tramroads and railroads, and to build, construct and project railroads and tramroads contiguous to and in connection with and for the purpose of facilitating and easily carrying on its business of sawing, manufacturing, etc., and though it did on some occasions transport passengers and freight for hire." *Ellington* v. *Beaver Dam Lumber Co.*, 19 S. E. —, 21 Ga. 53.

And again from the same authority and on the same page; "A railroad company is a *quasi*-public corporation, and owes certain duties to the public, among which are the duties to afford reasonable facilities for the transportation of persons and property, and charge only reasonable rates for such service." *Chicago, M. & St. P. R. R. Co.* v. *Wabash, St. L. & P. R. Co.* (U. S.), 61 Fed. 993, 997, C. C. A. 659.

Our own statute, section 1594, Code of 1906, under the chapter on Definitions and Rules exonerates the defendant from liability. The definition given by this section being as follows: "Railroads: Every person, firm, association of persons or company, whether incorporated or not, who shall own or operate a railroad as a common carrier."

Again we say there is not an intimation in the declaration of appellee that appellant is a common carrier, nor is there any intimation in the record anywhere that appellant is amenable to section 4058 of the Code of 1906. This being true we insist that every instruction granted appellee was erroneous and it was also fatal error to refuse appellant the instruction in which the jury was charged that unless actual damages were proven they should find for the defendant. In view of the testimony as to actual damages in this case and the errors committed by the lower court in submitting the question, of penalties to the jury we earnestly insist that the case should be re-

versed and the suit dismissed. It is perfectly clear that plaintiff is entitled to no damages when the question of penalty is eliminated and it would be useless for the cause to be reversed for further hearing.

*Byrd & Byrd,* for appellee.

The declaration charges, and it is not denied, that the appellant, defendant in the lower court, was a corporation chartered and organized under the laws of Louisiana and that it owned and operated a railroad over and across plaintiff's land, in Neshoba county, Mississippi.

The jury returned a verdict for the plaintiff in the sum of two hundred and fifty dollars without specifying what particular item of damage claimed and proved it was intended to cover.

The burden of the appellant's argument is that the appellant is a sawmill company and that it operates its own line of railway and that not being a "railroad company" it is not liable to the penalty of the statute requiring cattle guards and plantation roads. We submit that this arguments is untenable when we inspect the pleadings and the testimony. The pleadings show that the defendant, appellant, is a corporation and that it constructed a railroad over and across appellee's lands, etc. To this the defendant, appellant, pleaded the general issue plea. We submit that if the defendant was not liable to this penalty by reason of any special matter then this special matter should have been pleaded and not having been pleaded then it is too late to advance the argument that it was not liable because not the kind of company liable under the statute. As far as the record shows the defendant under its Louisiana Charter might well have been authorized to conduct the business of a railroad company, and in fact it was doing this very thing. Appellant says, in its brief, "It is the contention of the appellant that there is a vast distinction between a railroad company, as contemplated by the legislature when it passed the act under consideration, and this defendant." We are unable to see, when the record

129 Miss.—18.

is silent as to the defendant's charter powers, that there is any difference between the New Deemer Manufacturing Company operating a railroad and for instance, the Illinois Central operating a railroad. The appellant also argues the great burden that would be placed on sawmill companies by making this statute applicable to them. The object of the statute as we understand it is to afford protection to the property owners along a line of railroad and it seems to us that stock gaps, cattle guards and plantation roads would be just as necessary when the road is a log road or when it is any other kind of road. The kind of road can make no difference as the object to be attained is the securing of necessary protection for the land owner through whose land the line of railway passes. If the road, as is the case here is built so that the plantation road cannot be used, then we fail to see why the fact that the railroad is operated by New Deemer Manufacturing Company and not by the Illinois Central Railroad would relieve the situation to any extent and relieve the New Deemer Manufacturing Company from liability.

But we earnestly insist that this record does not show that the verdict in this case is based on the violation of the statute in regard to stock gaps, cattle guards and plantation roads. As far as this record shows the verdict might well have been for the loss of the field of hay and the expense of guarding the gaps made in the fences of appellee by appellant.

Laying aside all consideration of the statutory liability we respectfully submit that the common law fixes liability independent of the statute. In 22 Ruling Case Law, p. 890, section 136 of the subject of Railroads, we find the following: "The adjudications upon the relative rights of railroads and the public are in harmony in applying the common-law rule declared as well by statute that when the railroad constructs its track across a highway or street it must make and maintain suitable crossings."

This doctrine is upheld by numerous decisions cited in the note to the above quotation.

So, we say, that even should we accept the appellants contention that the statute does not apply to appellant then the common-law applies and they are equally liable.

But another view of this case which has been wholly ignored by appellant are the items of actual damage which were actually proved and which the jury might well have based their verdict upon, might have been the very thing which the verdict was for, and as far as the record shows the verdict was for these items.

Will the appellant successfully contend that there were no actual damages proved? We think not. Then, if there were actual damages proved and the jury returned a verdict who can say that the verdict was not for the actual damages instead of the statutory penalty.

The appellant complains of the giving of the instructions at the request of the plaintiff, but it fails to point out the error in the instruction except to say that in as much as the statute for the penalty did not apply the instructions should not have been given. We submit that the appellant's position as to this proposition is wholly untenable and will not be seriously considered by this court.

We submit further that even though the instructions as to the statutory penalty were erroneous they were harmless for the reason that the appellant was liable for actual damages and the verdict as rendered was not excessive for actual damages.

Viewing this completed record we submit that the verdict of the jury was righteous and in fact the only verdict which could have been rendered under the facts of this case and this case should be affirmed.

Ethridge, J., delivered the opinion of the court.

The appellee was plaintiff in the court below, and filed a suit against the appellant, a lumber manufacturing company, for damages inflicted upon the plaintiff by operating its logging road through the plantation of the plaintiff and failing to properly construct stock gaps at the point of entry and point of exit, said line passing through the

plaintiff's pasture, also his failure to construct a suitable crossing for a plantation road, bringing suit for the statutory penalty contained in the chapter on railroads and also for damages incurred by the plaintiff by cattle getting out of the pasture and depredating upon his growing crops, and also for the expenses incurred in guarding the cattle in the pasture to prevent their going out, making a sum total of seven hundred and fifty dollars statutory penalty, six hundred dollars actual. damages, and asking for punitive damages the sum of one thousand dollars.

The proof for the plaintiff showed that the defendant company secured a right from the plaintiff to build its logging road, operated over rails and ties by steam locomotive and logging cars, and that in passing through his premises the defendant failed to construct cattle guards, or stock gaps, at the point of entry and point of passing through his premises, and also that the defendant failed to construct and maintain a suitable plantation road crossing. The plaintiff's testimony showed actual damages, and also that there were no stock gaps constructed, and that there was a long delay in constructing a crossing for a plantation road.

The defendant requested and was refused an instruction informing the jury that it was not liable for the statutory penalty for a failure to erect cattle gaps, and also asked and was refused an instruction informing the jury that the defendant was not liable for a statutory penalty for a failure to make a plantation road. The plaintiff was given an instruction that it was the duty of the defendant to maintain and construct necessary, proper, and suitable crossings over its track for necessary plantation roads, and if the jury believe from the testimony that the defendant's line of railroad crossed plaintiff's plantation, and that it failed and neglected to construct and maintain convenient crossings over its road track, then the jury should find for the plaintiff the sum of two hundred and fifty dollars statutory penalty. The plaintiff also secured an instruction that, if the defendant failed to construct

necessary guards and gaps where its line entered land of the plaintiff, then they should find for the plaintiff the statutory penalty of two hundred and fifty dollars for one gap for each line.

The testimony for the defendant tended to show that necessary and proper stock gaps were properly constructed and that a crossing for a plantation road was built when requested by plaintiff. The jury returned a general verdict for two hundred and fifty dollars, upon which judgment was entered, and from which judgment this appeal is prosecuted.

The question presented by the appellant for decision is whether the lumber company, operating a logging road on tracks, with locomotives and cars, is subject to the statutory penalties contained in the chapter on railroads. Section 4058, Code of 1906 (section 6686, Hemingway's Code), reads as follows:

"It is the duty of every railroad company to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land, and to make and maintain convenient and suitable crossings over its track for necessary plantation roads. For any failure so to do, the railroad company shall be liable to pay two hundred and fifty dollars, to be recovered by the person interested. A person owning or having an interest as cropper or tenant in land in said inclosure shall have a right of action under this section, whether the land of such person is entered or traversed by said track or not; and this section shall apply to all inclosed land, whether said land is or may be situated in a county or district where the stock law is or may be in force or not. But such penalty shall not be cumulative, and only one recovery shall be had for each failure."

Do the words "every railroad company" embrace logging roads, similar to railroads in construction, over which are operated locomotives and cars, or does the term "railroad" means the general commercial railroads, carrying persons and property for hire known as common carriers?

Section 1594, Code of 1906 (section 1361, Hemingway's Code), under the head "Railroads," reads as follows: "Every person, firm, association of persons or company, whether incorporated or not, who shall own or operate a railroad as a common carrier."

Section 4839, Code of 1906 (section 7624, Hemingway's Code), provides that the track of every railroad which carries persons or property for hire is a public highway, etc. A similar provision is found in section 184 of the state Constitution. Section 193 of the Constitution provides that every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the act or omission of the said corporation or its employees as are allowed by law to other persons not employees, where the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured, etc. In construing this latter section this court, in the case of *Bradford Const. Co.* v. *Heflin,* 88 Miss. 314, 42 So. 174, 12 L. R. A. (N. S.) 1040, 8 Ann. Cas. 1077, in discussing the meaning of the term "railroad company," as used in this section, used the following language:

"The well-known usual powers granted in charters for construction companies are wholly different from those usually granted to railroad corporations properly known as such—chartered as such. It is so exceedingly plain that the Bradford Construction Company is not a railroad corporation that that matter cannot be seriously discussed, and it must be stated that learned counsel for plaintiff do not so insist. They hesitate, of course, to claim that, as chartered, it is a railroad corporation; but their ingenious insistence is that in this particular case the Bradford Construction Company is, while operating the train in question, under the circumstances shown in the record, to be treated as if it were a railroad corporation, within the meaning of said section 193, or, to put it a little differently, their precise contention is, since, as they say, the Bradford Construction Company was doing work which was

railroad work—precisely the same sort of work in all respects as to danger and otherwise, which the Gulf & Ship Island Railroad would have done if it had been constructing this track—that therefore, looking to the nature of the employment, the dangerousness of the work being done by employees handling a train on the track, etc., the Bradford Construction Company is to be treated, in this instance, as if it were a railroad corporation. If this test were adopted, undoubtedly every logging railroad, every railroad running to a mine, every railroad of whatever size or character, owned or operated by any sort of partnership, association of persons, or even by any private individual, would necessarily have to be held as a railroad corporation, within the meaning of said section 193, merely and only because the nature of the work done by its employees was of a like sort of dangerousness with that performed by the employees of railroad corporations proper. No such contention can possibly be sustained by any true reasoning, regard being had to the history of our said section 193. The argument is rather one for what the said section 193 of the Constitution ought to have declared the law to be than what it did declare the law to be."

This opinion is too lengthy to quote from on this subject in detail, but a careful reading of the case shows clearly the distinction between railroads and logging roads and similar roads operating locomotives for purely private purposes.

Again, this court dealt with the distinction in construing the same section 193 of the Constitution, showing that the terms "railroads," as used in this section, embraces only railroads proper which carry freight and passengers, and does not include logging or mining railroads. *Givens* v. *So. Ry. Co.*, 94 Miss. 830, 49 So. 180, 22 L. R. A. (N. S.) 971. In *Gibbs* v. *Drew*, 16 Fla. 147, 26 Am. Rep. 700, the Florida supreme court, in discussing the meaning of the word "railroads," says: "As the term 'highway' imports in law a road, the use of which is in the public, so the legal signification of the term 'railroad' is not only a road or

way on which iron rails are laid, but a road as incident to the possession or ownership of which important franchises and rights affecting the public are attached. This is unquestionably one of its significations."

And again, at page 702 of the American Reports (16 Fla. 151), the court says: "Our conclusion is that a railroad is a public work, the possession of which is attended with the right and duty to use and employ the franchises granted by the sovereign in connection with and as appurtenant to it."

There are many conflicting definitions of the term "railroad," and after all the terms is to be construed with reference to the general statutes using the term. The provision imposing statutory penalties is contained in the chapter on railroads; and the chapter on definitions and rules, as well as the other sections referred to, show that the penalties were intended to be applied to commercial railroads. The sections are penal, and are not to be extended by construction. In other words, they are to be strictly construed, and are not to be extended by implication or construction. Of course, a person using a logging railroad would be under duty to construct it with due regard for the interests of people whose plantations they cross, and in its operation it would have to be operated with due regard to the rights of other persons; but the damages for which they are responsible are actual damages, and in proper cases for punitive damages, but are not subject to the penalties imposed in the statute above cited. We cannot say that the giving of the instructions for the plaintiff did not contribute to the verdict. Indeed, the verdict may have been founded upon one of those statutory penalties.

For the error of giving plaintiff the instructions authorizing the recovery of the statutory penalties, and for the error of refusing the defendant an instruction informing the jury that it was not liable for statutory penalties, the judgment will be reversed, and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*